555 P.2d 108

**STATE of Arizona, Appellee,**

v.

**Calvin Lee DUGAN, Appellant.**

**No. 3284.**

Supreme Court of Arizona,
In Banc.

Sept. 13, 1976.

Bruce E. Babbitt, Atty. Gen., Phoenix, Dennis DeConcini, Former Pima County Atty., David G. Dingeldine, Pima County Atty., Harley D. Kurlander, Deputy County Atty., Tucson, for appellee.

Richard Parrish, Tucson, for appellant.

GORDON, Justice.

The appellant, Calvin L. Dugan, was convicted of one count of first degree murder in violation of A.R.S. §§ 13–451, 13–452 and 13–453 and two counts of attempted armed robbery in violation of A.R.S. §§ 13–108, 13–641 and 13–643. He received a sentence of life imprisonment on the murder charge and a sentence of not less than two and one-half nor more than ten years on each of the armed robbery counts. We have jurisdiction pursuant to A.R.S. § 13–1711.

■ The appellant's sole contention is that the trial court erred by refusing to suppress certain physical evidence allegedly obtained as a fruit of an illegal search and seizure. The ruling of the trial court will not be disturbed on appeal absent clear and manifest error. See *State v. Boyer,* 106 Ariz. 32, 470 P.2d 439 (1970); *State v. Vandeveer,* 23 Ariz.App. 331, 533 P.2d 91 (1975).

The facts in this case viewed in a manner most favorable to the trial court's ruling, are as follows. At approximately 6:45 p. m. on February 18, 1975 two individuals in a motor vehicle attempted to rob Cecil and Lambert Taylor as they walked across a vacant lot in Tucson. A scuffle ensued during which Cecil was killed by one of the robbers. Lambert escaped unhurt, and gave police officers a description of the murderer and the vehicle, the latter described as a two door 1963 or 1964 Chevrolet, white over silver-gray, with dirty white over light gray interior upholstery.

During a search of the crime scene the day after the murder the police discovered two blue-green plastic chips which they later determined came from the right corner of an armrest on a 1963 to 1967 Chevrolet Biscayne. A bulletin was issued later that day directing officers to stop automobiles matching the suspect vehicle's description and ascertain whether chipped portions of the armrests were missing.

At approximately 8 a. m. on February 21 Sgt. John Barnhorst of the Tucson Police Department observed a blue vehicle of the same year and general description as the suspect vehicle parked in a driveway on private property one block from the murder scene. From the public sidewalk, a distance of twelve to fourteen feet, the officer noted that a portion of the plastic on the driver's side armrest was missing. At that point he stepped onto the property and looked in the passenger side window, confirming his earlier conclusion as to the missing chips. The appellant's mother, Alice Walker, appeared at a window, stated that the car belonged to her son, and asked the officer to leave. Sgt. Barnhorst returned to his car, relayed the information he had obtained to other detective units, and then rendezvoused with Detective Larry Bunting.

Detective Perry Lowe came onto the property at approximately 11:30 a. m. the same day to make a similar investigation when he observed the vehicle in the driveway with the driver's side door left open. From the momentary look he was able to get of the door before being requested to leave by Mrs. Walker, the officer was unable to discern chipping on the armrest.

At 12:30 p. m. that afternoon Detective George Martin and Detective Bunting, briefed by other officers as to their observations, saw Mrs. Walker drive from her residence to another location in the suspect vehicle. Soon after her arrival at her destination the officers pulled up and parked next to her and requested permission to search the car, saying that it "had been involved in an incident." Examination revealed that the chips found at the murder scene matched the missing plastic from the driver's side armrest. Blood stains were subsequently found on the vehicle and Lambert Taylor positively identified it as the car used in the crime.

The trial court denied the motion to suppress the 12:30 p. m. search on the basis "that there was probable cause to search the motor vehicle." Probable cause to search exists where the seizing officer has " * * * reasonable cause * * * for belief that the contents of the automobile offend against the law." *Carroll v. United States*, 267 U.S. 132 at 158–9, 45 S.Ct. 280 at 287, 69 L.Ed. 543 at 554 (1925); *State v. Jolliff*, 111 Ariz. 376, 530 P.2d 1105 (1975). There is a serious question as to whether the requisite circumstances existed in this case, as the suspect vehicle had coloring quite different then that described by Lambert Taylor, and Detective Bunting admitted he approached the car on the "outside chance that it might possibly be involved." We decline to decide that issue, however, as there is overwhelming evidence that the appellant's mother consented to the search of the vehicle. On appeal the trial court's judgment will be affirmed on any grounds which were within the issues, such as where the correct legal result was reached even though it was based on the wrong reason. See *State v. Sardo*, 112 Ariz. 509, 543 P.2d 1138 (1975); *State v. Martin*, 102 Ariz. 142, 426 P.2d 639 (1967).

The issue of whether there was consent is a question of fact to be determined from the totality of circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Both officers present at the 12:30 p. m. search testified that Walker gave them express permission to look over the vehicle. Her testimony supports this position, although she alleges that the officers based their request to search on an assertion that the vehicle had been involved in an accident and because of this she asked one of the officers why he was looking at the inside of the vehicle. The only reasonable conclusion to be gleaned from the record, however, is that Walker's consent indicated permission to inspect both the interior and exterior of the car and that she never retracted that consent.

We need not reach the question of whether the products of the 12:30 p. m. search were inadmissible as the fruits of the allegedly illegal 8:00 a. m. and 11:30 a. m. searches.[1] The consent in this case constituted an intervening act of free will which broke any causal chain linking prior illegalities and the evidence ultimately seized. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *People v. Sesslin*, 68 Cal.2d 418, 67 Cal.Rptr. 409, 439 P.2d 321 (1968); *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (Filed August 6, 1976).

The convictions and sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concurring.

---

[1]. We do note, however, that the Fourth Amendment protects people and not places, and "[w]hen the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable." *Giacona v. United States*, 257 F.2d 450 at 451 (5th Cir. 1958). Areas where an individual has exhibited a reasonable expectation of privacy are protected. *Katz v. United States*, 389 U.S. 347 at 351, 88 S.Ct. 507 at 511, 19 L.Ed.2d 576 at 582 (1967) indicates that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." See also *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), and *People v. Bradley*, 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129 (1969); *People v. Edwards*, 71 Cal.2d 1096, 80 Cal.Rptr. 633, 458 P.2d 713 (1969). Cases have recognized that in most instances a person does not have a reasonable expectation of privacy as to a nonintrusive viewing of items in his driveway. *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *People v. Terry*, 70 Cal.2d 410, 77 Cal.Rptr. 460, 454 P.2d 36 (1969); *State v. Corbett*, 15 Or.App. 470, 516 P.2d 487 (1973). This is especially true where, as in the 8:00 a. m. search in this case, the item was initially viewed from a public sidewalk. In addition, it does not seem that an individual has a reasonable expectation of privacy in the armrest of a vehicle when the door to which it is attached is left open and only a slight intrusion onto the driveway of the property would render it plainly visible.