601 P.2d 333

STATE of Arizona, Appellee,

v.

**Larry CRUTCHFIELD, Appellant.**

**No. 1 CA–CR 3233.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 23, 1979.

Rehearing Denied Oct. 4, 1979.

Review Denied Oct. 23, 1979.

Charles F. Hyder, Maricopa County Atty. by James R. Minter, Deputy County Atty., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Edward C. Voss, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

The standing of a criminal defendant to raise fourth amendment search and seizure issues figures prominently in this appeal.

On September 9, 1976, the defendant/appellant, Larry Crutchfield, was charged with transportation of marijuana in violation of A.R.S. § 36–1002.07. Following a denial of a motion to suppress, the matter was tried to a jury and ended in a mistrial as a result of the jury's inability to agree.

Following the mistrial, the defendant again made a motion to suppress based upon the then recent decision of the United States Supreme Court in *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The trial court denied the motion to suppress based primarily upon a finding that the defendant lacked standing to question the search and seizure which resulted in the discovery of the marijuana which defendant was charged with transporting.

The marijuana was subsequently introduced into evidence and the second jury convicted the defendant. He was sentenced to not less than five years nor more than nine years in the Arizona State Prison. He appeals, questioning the denial of his motion to suppress; the introduction of evidence taken from a rental vehicle; and the propriety of evidence introduced at his aggravation/mitigation hearing on sentencing.

The facts are not in material dispute. At 12:20 a. m., the morning of August 17, 1976, the defendant and a "hippie-type" young man, claimed by the defendant to be his nephew, arrived at Sky Harbor Airport in Phoenix, Arizona, preparatory to the nephew catching a flight to South Bend, Indiana. Each was carrying a suitcase. Because they were late, they were directed by the ticket agent to go directly to the loading area or they would miss their flight. At the check-in area was a baggage inspection area and the defendant and his nephew each put one suitcase on the table which is the staging area for a conveyor belt that passes objects through an x-ray machine. As the suitcases moved through the x-ray machine, the security operator observed that both suitcases contained brick-shaped objects in a row. Since the operator was unable to determine the contents of the suitcases, she requested two of her co-workers to conduct a visual search of the contents. Also at the security area were two Phoenix police officers who had observed the brick-type images on the x-ray screen. Upon being told that the suitcases would have to be opened, the defendant, although the testimony at this point is confusing,

apparently advised airport security that if he had to open the suitcases, he would cancel his flight and leave. Apparently, at this point defendant's nephew disappeared.

As the defendant retrieved the suitcases and attempted to leave the check-in area, one of the police officers who observed the entire sequence of events stopped the defendant and inquired about the defendant's reluctance to have the suitcase searched. Again, the defendant reiterated that he would not be going anyplace and wished to leave the area. As the defendant again attempted to leave, he was detained by the police officer, and advised of his rights. The police officer then took physical custody of the luggage and removed the defendant and the baggage to a security area at the airport.

At the security area, the defendant called his attorney, and the police officer called a narcotics officer of the Phoenix Police Department. Apparently, the narcotics officer, who had with him a narcotics sniffing dog, and the defendant's attorney arrived at the security office at approximately the same time. The defendant was again advised of his rights. The narcotics dog gave a positive reaction to the suitcases. The luggage was again passed through the x-ray machine to check for booby-trap devices. The bags were then forcibly opened, revealing bricks of marijuana and a newspaper which contained latent fingerprints of the defendant.

The defendant's attorney, prior to leaving the scene, and following the arrest of his client, specifically advised the police officers present not to question the defendant "pertaining to his involvement in the case." As the defendant was being transported to jail, he was asked by one of the officers whether he had a car at the airport. The defendant responded in the affirmative, and stated that it was a rental car parked at the curb, gave the officers the keys and requested that it be returned to the car rental agency. The police conducted an inventory search of the rental vehicle which revealed a loaded pistol on the front seat and a rental agreement for the vehicle showing the defendant as an authorized driver.

The marijuana, the newspaper, the pistol and the rental agreement were all introduced into evidence at time of trial.

The defendant throughout the proceedings consistently maintained that he had no knowledge of the contents of the suitcase. His testimony was basically as follows. On the evening of August 16, 1976, he received a telephone call at his home in Tucson from his nephew at the Tucson airport advising him that he had missed his flight from Tucson to South Bend, Indiana, but that he could catch a connecting flight in Phoenix. The defendant then went to the Tucson airport and picked up his nephew who placed the two suitcases in question in the trunk of defendant's vehicle. They then drove to Phoenix, where the defendant assisted his nephew in carrying the suitcases to the check-in area with the events then transpiring as previously stated. He consistently urged that the suitcases belonged to his nephew and that he had no knowledge of their contents.

Following conviction and at the mitigation aggravation hearing on sentencing, the state presented the testimony of a federal agent who was the investigating officer in a case entitled *United States v. Becker.* This officer testified that he was present and participated in the trial of Becker, at which trial Becker testified that certain drugs found in his possession did not belong to him but belonged to the defendant. Becker was subsequently convicted of the possession charge.

On appeal, the defendant contends that:

(1) the warrantless search of the suitcases at the airport was in violation of the fourth amendment of the United States Constitution;

(2) the search of the rental car was improper as being in disregard of his attorney's instructions under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and

(3) the introduction of the federal agent's hearsay testimony at the sentencing hearing was improper.

The state, as to the first issues, urges that the warrantless search was proper, but contends that in any event, given the defendant's disavowal of any interest in the suitcases, he lacks standing to question their search and seizure. We will deal with the standing issue first.

The state's standing argument is predicated upon the general view that rights under the fourth amendment are personal and may be asserted only by those whose rights have been violated. As stated in *Alderman v. United States,* 394 U.S. 165, 171–174, 89 S.Ct. 961, 965–967, 22 L.Ed.2d 176, 185–187 (1969):

"The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who were aggrieved solely by the introduction of damaging evidence.

\* \* \* \* \* \*

"We adhere . . . to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."

From this premise, the state urges that since the defendant claims the suitcases belonged to his nephew, only the nephew can assert fourth amendment rights attributable to those suitcases and thus the defendant lacks standing to assert these rights. In addition, the state contends that the crime with which the defendant was charged, transporting marijuana, does not have possession as one of its essential elements, and therefore the "automatic" standing rationale espoused in *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) is not applicable.

The Arizona Supreme Court has had occasion recently to review the leading United States Supreme Court decisions on standing in the case of *State v. Walker,* 119 Ariz. 121, 579 P.2d 1091 (1978). In that case, the court concluded:

"The latest pronouncement on the general requirement of standing is *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). [Additional citations omitted.] In *Brown* the Supreme Court held that a person would not have standing if: 1) he was not on the premises at the time of the contested search and seizure; 2) he alleged no proprietary or possessory interest in the premises; or 3) he was not charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence *at the time of the contested search and seizure."* (Emphasis in original.)

While *Brown* is helpful in *premises* searches, it is less instructive on movable personal property searches. (*Walker* was an airport suitcase search case, but turned on an abandonment theory.)

Two additional Arizona standing decisions merit comment. In *State v. Elias,* 111 Ariz. 195, 526 P.2d 734 (1974), the defendant had hired a third party to transport marijuana in the third party's vehicle from Douglas, Arizona to Tucson, Arizona. The third party's vehicle was stopped en route and searched. The defendant, who was charged with transportation of marijuana and conspiracy to possess marijuana for sale and transportation, was held not to have standing to question the legality of the search of the co-conspirator's vehicle. In *Elias,* it is clear that the defendant had made a deliberate attempt to divorce himself from the physical transportation of the contraband and to this end used the third party's vehicle.

In *State v. Billups,* 118 Ariz. 124, 575 P.2d 323 (1978), the Arizona Supreme Court held that a defendant had standing to question the search of a shed owned by the defendant's sister where the sister had granted the defendant "permissive use" of the premises. The critical factor in *Billups* was that the defendant "had a possessory interest in the premises because of the permissive use allowed by the owner."

■ The legal principle that can be drawn from these cases is that the factors to be considered in determining standing are: (1) the physical presence of the de-

fendant at the time of the search (*United States v. Brown, supra*); (2) the custodial relationship between the defendant and the object to be searched (*State v. Walker, supra; State v. Elias, supra*); (3) the relationship existing between the true owner and the defendant as to the object to be searched (*State v. Billups, supra*); and (4) the possessory quality of the crime with which the defendant is charged (*United States v. Jones, supra*).

■ Applying these factors here, the defendant was obviously physically present at the time the suitcases were searched. He had immediately prior to the search exercised custody of the suitcases by attempting to remove them and refusing further search of them. Even believing the defendant's story, he had permissive custody from his nephew to transport the suitcases to the check-in area and upon an abandonment by the nephew, continued to exercise that permissive custody. Finally, while the defendant was charged with transporting marijuana, which does not necessarily require actual physical possession at the time the search is conducted, as an element of the crime, *see State v. Ellis, supra,* here the defendant's relationship with the suitcases, especially after arrival at the airport, was such that the state's proof of physical custody of the suitcases of necessity proved the transportation. Considering all of these factors, we conclude that the defendant had standing to question the search of the suitcases in question, notwithstanding his subsequent disclaimer of ownership (which is not necessarily inconsistent with the bailee stance assumed by the defendant prior to the search.) *See* 3 W. LaFave, Search and Seizure § 11.3, at 575–577 (1978).

Having concluded that the defendant has standing, we turn to the issue of the legality of the warrantless search of the suitcases in the security office of the airport. Both parties on appeal have centered their respective attacks on whether "probable cause" existed at the time of the original detention, or assuming the cause rose only to the level of "reasonable suspicion" under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), whether subsequent events provided sufficient probable cause to search the suitcases without a search warrant. In view of the recent United States Supreme Court decisions in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) and *Arkansas v. Sanders,* —— U.S. ——, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), we conclude a discussion of probable cause under the circumstances of this search is immaterial.

In *Sanders,* the Supreme Court examined and reaffirmed the position it had taken in *United States v. Chadwick, supra.* In *Chadwick,* the court had held that once the object to be searched is securely within the control of the police, although probable cause exists to search, that search may not be conducted without the prior judicial intervention of the search warrant. In *Sanders,* the issue was whether the *Chadwick* rationale applied to a suitcase removed from a stopped automobile. The majority assumed for the purposes of their analysis that probable cause existed which would justify the police "in stopping the vehicle, searching it on the spot, and seizing the suitcase they suspected contained contraband." The Court noted:

"Here, as in *Chadwick,* the officers had seized the luggage and had it exclusively within their control at the time of the search. Consequently, 'there was not the slightest danger that [the luggage] or its contents could have been removed before a valid search warrant could be obtained.'"

Given this extent of police control, the court went on to note:

"A closed suitcase in the trunk of an automobile may be as mobile as the vehicle in which it rides. But as we noted in *Chadwick,* the exigency of mobility must be assessed at the point immediately before the search—after the police have seized the object to be searched and have it securely within their control. [Citation omitted.] Once police have seized a suitcase, as they did here, the extent of its mobility is in no way affected by the place from which it was taken."

Moreover, the court commented on the peculiar characteristics associated with suitcases:

"One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored. Indeed, the very purpose of a suitcase is to serve as a repository for personal items when one wishes to transport them. Accordingly, the reasons for not requiring a warrant for the search of an automobile do not apply to searches of personal luggage taken by police from automobiles."

The court went on to hold the warrantless search of the suitcase to be invalid and the decision of the Arkansas Supreme Court to suppress the evidence was affirmed.

In this case, it is clear that the suitcases in question, *at the time the search was conducted,* were solely and exclusively in the control of the police, having been removed to a security office and there subjected to various pre-search procedures. Assuming the search and seizure rules applicable to airport searches apply, *see State v. White,* 26 Ariz.App. 505, 549 P.2d 600 (1976), and assuming the police had probable cause to both arrest the defendant and seize the suitcases involved, under the rationale of *Chadwick* and *Sanders,* once the suitcases were "securely within their control," the police were not justified in proceeding further without obtaining a search warrant. Consequently, the trial court should have granted the motion to suppress the contents of the suitcase and its failure to do so is reversible error.

Since we reverse on this issue, we need not deal with the other thorny issues on appeal.

Judgment and sentence reversed.

SCHROEDER, P. J., and OGG, C. J., concur.