625 P.2d 898

**STATE of Arizona, Appellee,**

v.

**Curtis MORROW, Appellant.**

**No. 5146–PR.**

Supreme Court of Arizona,
In Banc.

March 6, 1981.

310

Robert K. Corbin, Atty. Gen., Phoenix by William J. Schafer, III and Jessica Gifford, Asst. Attys. Gen., for appellee.

Roger S. Auerbach, Tucson, for appellant.

CAMERON, Justice.

Following the denial of the motion to suppress, defendant Curtis Morrow submitted the question of his guilt or innocence to the court, sitting without a jury, on the basis of the police reports, the grand jury transcript and the motion to suppress transcript. On 13 February, 1980, defendant was found guilty of unlawful possession of a narcotic drug (cocaine) for sale of a value less than $250.00 in violation of A.R.S. § 36–1002.01(A) and (B), and unlawful possession of marijuana in violation of A.R.S. § 36–1002.05. Defendant was sentenced to serve six years in the Arizona State Prison for the cocaine conviction and placed on thirty days unsupervised probation for the marijuana conviction. Defendant now appeals both convictions challenging the trial court's denial of the motion to suppress. We have jurisdiction pursuant to A.R.S. § 13–4035.

Defendant raises two questions on appeal:

1. Was the use of a trained narcotics dog to sniff defendant's suitcase in the baggage unloading area of the Tucson International Airport a search in violation of the Fourth Amendment to the United States Constitution?

2. Did the warrantless search of defendant's attache case also violate the Fourth Amendment?

The facts viewed in the manner most favorable to upholding the trial court's ruling on the motion to suppress are as follows. *State v. Dugan*, 113 Ariz. 354, 555 P.2d 108 (1976). On 5 June 1979, Donald.

Benton, a narcotics detector dog handler of the United States Customs Service, was working his trained dog on domestic baggage at Tucson International Airport. The dog handler testified that this was done approximately three times a week because of the infrequent opportunity to reward the dog while working on international baggage. In each instance, Benton obtained the approval of the Customs Service supervisor before using the dog in this manner. The dog was usually worked for an hour. While airline officials had apparently never given Benton or other law enforcement personnel express permission to use dogs to screen domestic luggage, airline officials had occasionally observed Benton working the dog in the area. The place where the dog was used was located behind the baggage claim area where the bags are unloaded, and is not generally accessible to the public.

As the baggage handlers placed luggage from American Airlines Flight 161, arriving from Chicago, on the conveyor belt in the baggage unloading area, the trained narcotics dog sniffed the luggage. The dog alerted on a brown soft-sided suitcase bearing an identification tag labeled "T. Lyton." Agent Edward Magnuson and other law enforcement officers then entered the baggage claim area and waited until defendant Curtis Morrow, carrying an attache case, picked up the suitcase.

Agent Magnuson approached defendant, displayed his badge, explained that the dog indicated that the suitcase contained drugs, and asked defendant if it was his. Following defendant's affirmative response, defendant was asked if he would consent to a search of the bag. Defendant agreed to the search even though Agent Magnuson had informed defendant of his right to refuse consent. Because the baggage claim area was crowded, defendant agreed to accompany Agent Magnuson and the other law enforcement officers to the baggage unloading area where the search could be conducted in relative privacy. At the time he was approached by the officers, defendant was also carrying an attache case bearing the initials "C" and "M."

After opening the suitcase and allowing the officers to inspect the contents, defendant removed a shaving kit from a pocket at the side of the suitcase. Inside the shaving kit Agent Magnuson discovered two baggies, one containing marijuana and the other containing seventeen valium tablets.

The officers then escorted defendant to the law enforcement office in the airport. After being asked his name and informed of his rights, defendant's person was searched by Agent Magnuson, but no identification was found. The officers then asked defendant to produce some identification to verify that he was in fact Curtis Morrow and not T. Lyton. Defendant removed a checkbook issued to Curt Morrow from the attache case. When agent Amos asked for further identification, defendant responded by making statements to the effect that "it" was not his, he knew nothing about it, and that he was mailing it for a friend. While making these statements, defendant put the checkbook back in the attache case and locked it.

Defendant was questioned on what "it" referred to, but he merely repeated the statements. Detective Bright then asked defendant to reopen the attache case so that the checkbook could be reexamined. Defendant responded by backing away from the table on which the attache case rested, raising his hands in the air, and stating that he knew nothing about "it." At this point defendant was handcuffed by one of the officers present.

After obtaining a screwdriver, Detective Bright forced open the attache case. Inside the case Detective Bright discovered a stamped but unsealed brown manila envelope addressed to "Al Leonette" in Chicago with the return address of "Associated Press Wire Photo Service" in New York City. The envelope contained two magazines, and in one of the magazines there was a baggie containing cocaine. The opening of the case occurred between 20 and 30 minutes after Agent Magnuson found the marijuana in the shaving kit.

The trial court, in denying the motion to suppress evidence obtained at Tucson International Airport on 5 June 1979, held that the alert by the narcotics dog established probable cause that narcotics were in the brown soft-sided suitcase, and the resulting search was with the defendant's consent. The trial court also determined that the search of the attache case was not improper because the defendant had abandoned the attache case and therefore lacked standing to object to the search. The trial court, in the alternative, held that there was a valid search incident to arrest. The Court of Appeals, Division Two, reversed. We granted the State's petition for review of the decision and opinion of the Court of Appeals.

## WAS THE USE OF THE DOG A SEARCH?

■ At the time the dog was allowed to sniff the incoming luggage, there was no reason to believe that defendant's luggage contained contraband. The sniffing by the dog of the defendant's suitcase was the sole basis upon which the officers later stopped and questioned the defendant and searched his luggage. A sniffing dog may provide probable cause for the issuance of a search warrant, *State v. Quatsling*, 24 Ariz.App. 105, 536 P.2d 226 (1975), *cert. denied*, 424 U.S. 945, 96 S.Ct. 1416, 47 L.Ed.2d 352 (1976); *United States v. Solis*, 536 F.2d 880 (9th Cir. 1976); *United States v. Fulero*, 162 App.D.C. 206, 498 F.2d 748 (1974); *State v. Wolohan*, 23 Wash.App. 813, 598 P.2d 421 (1979), or when exigent circumstances are present, justify a search without a warrant. *State v. Martinez*, 26 Ariz.App. 210, 547 P.2d 62, *aff'd and adopted*, 113 Ariz. 345, 554 P.2d 1272 (1976). The use of dogs has also been held to provide probable cause for a warrantless arrest. *United States v. Race*, 529 F.2d 12 (1st Cir. 1976); *Mata v. State*, 380 So.2d 1157 (Fla.App. 1980); *People v. Campbell*, 67 Ill.2d 308, 10 Ill. Dec. 340, 367 N.E.2d 949 (1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). Thus, if the dog's sniffing of the luggage on American Airlines Flight 161 was not a search, the subsequent consensual search of defendant's suitcase was constitutionally permissible. But if the dog's sniff constituted an impermissible search, then the subsequent consensual search of the suitcase would be constitutionally suspect as there would be no reasonable suspicion or probable cause to justify the stop of defendant. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The courts are split on the question as to whether the sniffing of a dog is a search. See Annotation, Use of Trained Dog to Detect Narcotics or Drugs as Unreasonable Search in Violation of Fourth Amendment, 31 A.L.R.Fed. 931. Some consider it a search which must have adequate constitutional underpinnings before evidence derived from the search may be admitted. *People v. Evans*, 65 Cal.App.3d 924, 134 Cal.Rptr. 436 (1977). Some consider it a search, but a reasonable search for Fourth Amendment purposes, *United States v. Meyer*, 536 F.2d 963 (1st Cir. 1976); *State v. Elkins*, 47 Ohio App.2d 307, 354 N.E.2d 716 (1976), while others do not consider the act of sniffing by a dog a search at all, but rather a "plain smell," a doctrine akin to "plain view." *United States v. Bronstein*, 521 F.2d 459, 31 A.L.R.Fed. 920 (2nd Cir. 1975), *cert. denied* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976). We believe that the better reasoned opinion is that a dog sniff of the air around a bag or parcel is not a search for Fourth Amendment purposes.

■ A search is an intrusion into an area in which a person has a reasonable expectation of privacy. *Terry v. Ohio*, supra. The United States Supreme Court has stated:

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. (citations omitted) But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582 (1967).

■ What emits from a bag, including powder or moisture, noise (such as a ticking

sound), or an odor, are things that are exposed to the public and are not, we believe, protected by the Fourth Amendment. The defendant should have no expectation of privacy in what the bag exudes into the area surrounding the bag. Where there is no violation of the integrity of the bag, what is seen, heard, or smelled without actually penetrating or intruding into the bag may be used as a basis for further investigation. In the case of a dog, superior olfactory senses make it easier to detect certain odors surrounding the bag. That does not change the fact that what the dog smells is in the area surrounding the bag and that is not a search of the bag itself. In *Bronstein,* supra, the "canine cannabis connoisseur" case, the court stated:

"* * * If the police officers here had detected the aroma of the drug through their own olfactory senses, there could be no serious contention that their sniffing in the area of the bags would be tantamount to an unlawful search. (citations omitted) We fail to understand how the detection of the odoriferous drug by the use of the sensitive and schooled canine senses here employed alters the situation and renders the police procedure constitutionally suspect." 521 F.2d at 461.

■ The airline officials had not objected to the presence of handler Benton and his dog in the baggage unloading area of Tucson International Airport, and the sniffing of the dog at a place where he had a right to be is akin to the "plain view" doctrine and is in "plain smell." The sniffing of the dog was not a search. This being the case, the State could act on the actions of the dog and make further investigation.

■ The opinion of the Court of Appeals and the defendant emphasized the point that in all the dog sniff cases which hold there is no search or if a search that it was reasonable, there was reason to suspect the presence of contraband before the dogs were called to sniff, and the use of the dog was a follow-up investigative device. In the instant case, there was no preknowledge of suspicious activities which persuaded the law enforcement personnel to

bring in the dog for further investigation. We do not believe, however, that this fact is important. If a dog's sniff is not a search, then it is immaterial whether there was pre-sniff knowledge. As long as the officer had a right to be where he was, he could see what was in "plain view," and his dog could smell anything in "plain smell."

We find no error in the search of the brown soft-sided bag, and the conviction for possession of marijuana is affirmed.

## SEARCH OF THE ATTACHE CASE

Defendant asserts that the warrantless search of the attache case violated his *Fourth Amendment rights.* We do not agree.

■ Defendant, prior to the search, made statements to the effect that he was helping a friend in conjunction with the disclaimers of ownership. Defendant carried the attache case and produced identification from it, but when the officers wanted to search the case, he backed away saying "it" was not his. Viewing all the circumstances existing at the time of the alleged abandonment in the light most favorable to upholding the trial court's finding, *Dugan,* supra, we believe that there was sufficient evidence from which the trial court could find that defendant's disclaimers of knowledge and ownership of the attache case immediately prior to the search constituted a voluntary abandonment of the case, negating any standing on the part of the defendant to challenge the search. *State v. Walker,* 119 Ariz. 121, 579 P.2d 1091 (1978).

In *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), the United States Supreme Court held that a defendant had standing to object to a search despite the fact that he testified that the property seized was not his, and that the house in which he was arrested was not his home. This "automatic standing" rule was overruled by the United States Supreme Court in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In *Salvucci,* the police searched an apartment which had been rented to the defend-

ant's mother. Defendant moved to suppress the evidence on the grounds that the affidavit supporting the application for the search warrant was inadequate. The District Court granted the motion, and the Court of Appeals affirmed, relying upon *Jones v. United States*, supra, stating the defendant had "automatic standing" to challenge the legality of the search without regard to whether he had an expectation of privacy in the premises search. A majority of the court said:

> "We are convinced that the automatic standing rule of *Jones* has outlived its usefulness in this Court's Fourth Amendment jurisprudence. The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have *not* been violated. We are unwilling to tolerate the exclusion of probative evidence under such circumstances since we adhere to the view of Alderman that the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to "defendants who have been subjected to a violation of their Fourth Amendment rights." 448 U.S. at 95, 100 S.Ct. at 2554, 65 L.Ed.2d at 630. (Emphasis in original).

On the same day, 25 June 1980, the United States Supreme Court decided *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). In that case the police, pursuant to a search warrant, searched the purse of Rawlings' female friend. In the friend's purse there were drugs which belonged to the defendant. The Kentucky Court of Appeals held that the defendant had no standing to contest the search of the friend's purse because Rawlings had no legitimate reasonable expectation of privacy. The United States Supreme Court upheld the finding of the Kentucky court that under the totality of the circumstances, the defendant had not made a sufficient showing that he had a reasonable expectation of privacy in the purse. The United States Supreme Court stated:

> "We believe that the record in this case supports that conclusion. * * *

"In sum, we find no reason to overturn the lower court's conclusion that petitioner had no legitimate expectation of privacy in Cox's purse at the time of the search." 448 U.S. at 105–106, 100 S.Ct. at 2561–62, 65 L.Ed.2d at 641–42.

We find no error in the search of the attache case, and the conviction for the possession of cocaine is affirmed.

So much of the opinion in the case of *State v. Crutchfield*, 123 Ariz. 570, 601 P.2d 333 (App. 1979) which was based in part upon the rule in *Jones v. United States*, supra, and which is inconsistent with the opinion in this case, is overruled.

The judgments of guilt and the sentences are affirmed.

HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.

STRUCKMEYER, Chief Justice, dissenting.

I dissent, believing that this search does not come within the purview of *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), and *Rawlings v. Kentucky*, 448 U.S. 114, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). If we assume that Morrow was not the owner of the attache case because he disclaimed ownership, still he had a reasonable and legitimate expectation of privacy by reason of his possessory interest. This interest was protected by the United States Constitution, Amendment 4. I would reverse.