910 P.2d 9

**STATE of Arizona, Appellee/Cross Appellant,**

v.

**Victor Raymond DeWITT, Appellant/Cross Appellee.**

**No. CR–95–0014–PR.**

Supreme Court of Arizona, En Banc.

Jan. 25, 1996.

Grant Woods, Arizona Attorney General, Phoenix, by Paul J. McMurdie, Christopher E. Avery, Tucson, for State of Arizona.

Wisdom, Logan & McNulty by Charles M. McNulty, Phoenix, for Victor R. DeWitt.

## OPINION

FELDMAN, Chief Justice.

We granted review to determine whether the seizure by police of evidence from the home of Victor Raymond DeWitt (Defendant) violated the provisions of art. II, § 8 of the Arizona Constitution and the Fourth Amendment of the United States Constitution.

## FACTS AND PROCEDURAL HISTORY

In response to a report of a possible burglary in progress, Phoenix Police Officer Gary McCaslin arrived at Defendant's house and began to investigate. McCaslin saw movement through an open window and believed someone was inside. Soon after noticing this movement, McCaslin observed a male suspect back out of the house. McCaslin immediately identified himself and handcuffed the man, who told McCaslin that his girlfriend was still inside. At McCaslin's direction, the male suspect called the girlfriend out. The suspects claimed to have permission from Defendant to be in the house, but they did not know how to contact Defendant and did not have a key.

Having good reason to believe he had interrupted a burglary in progress, McCaslin entered the house to look for additional suspects and any evidence of a burglary. During this sweep, McCaslin noticed chemicals, glass vials, and laboratory equipment in a storage space above an open closet. He suspected that these items may have been used to manufacture drugs. After finishing his sweep, McCaslin called for his supervisor, Sergeant Saylor, who seems to have been about ten minutes away from the premises. When Saylor entered the house, McCaslin took him to the closet to look at the items McCaslin had seen during his sweep. Saylor also was unable to tell whether the items were used in manufacturing drugs and called for assistance from the Drug Enforcement Bureau ("DEB"). Neither Saylor nor McCaslin at any time touched or moved items in the closet.

The DEB agents arrived about forty-five minutes later. To get a better view of the items on the shelf, the DEB agents pulled over a stool that was in the room and one of them stood on it. Again, none of the items were touched. Based on their observations and experience, the DEB agents obtained a warrant to search Defendant's house. During execution of the warrant, the officers seized drugs, drug paraphernalia, and chemicals used in drug production.

Defendant was charged with two counts of possession of dangerous drugs for sale, a class 3 felony. At the evidentiary hearing on Defendant's motion to suppress the evidence seized, the trial court ruled that none of the warrantless entries were unreasonable. The court also found that the warrant was not supported by probable cause because the agents' affidavit stated only that the items observed were consistent with equipment used in manufacturing illegal drugs and were "not currently in a condition where they are manufacturing methamphetamine." Nonetheless, the trial court admitted all the evidence under the good faith exception to the exclusionary rule.

The state later charged Defendant with one count of possession for sale of Diazepam, also a class 3 felony. This charge was consolidated with one of the original counts of

possession for sale and the remaining count was dismissed. Defendant waived his right to a jury trial and submitted his case to the court on stipulated evidence and the police reports. The trial court found Defendant guilty of both charges and sentenced him to concurrent, aggravated 7.5–year terms of imprisonment.

The court of appeals affirmed. In doing so, it held that McCaslin's initial warrantless entry was justified and that his inadvertent discovery of the items in the closet merited a new justification for the officers' continued presence in the residence. The court also held that the DEB agents' warrantless entry was justified to confirm McCaslin's suspicion of illegal activity:

> The state and federal constitutions do not prohibit officers from backing each other up in such circumstances, or from drawing on each others' expertise and experience in evaluating a crime scene.

*State v. DeWitt,* 182 Ariz. 347, 355, 897 P.2d 649, 657 (App.1994). Judge Grant dissented, concluding that the DEB agents' entry and search were constitutionally unauthorized. *Id.* at 357, 359, 897 P.2d at 659, 661 (citing Ariz. Const. art. II, § 8; *State v. Bolt,* 142 Ariz. 260, 264–65, 689 P.2d 519, 523–24 (1984); *State v. Martin,* 139 Ariz. 466, 474, 679 P.2d 489, 497 (1984)).

## ISSUE AND JURISDICTION

The parties stipulated at the suppression hearing that it took the entry of all the officers—McCaslin, Saylor, and the DEB agents—to provide the basis for the affidavit supporting issuance of the search warrant. Thus, but for the DEB agents' entry and search, the police would not have known the possible evidentiary value of the items in the closet and could not have met the probable cause requirement to obtain the search warrant. The only issue we decide today, therefore, is whether the third warrantless entry and confirmatory search of Defendant's home by the DEB agents were permissible when the evidentiary value of the items was not known to McCaslin or Saylor. We have jurisdiction under art. VI, § 5(3) of the Arizona Constitution and Ariz.R.Crim.P. 31.

## DISCUSSION

### A. Was there a separate search by the DEB agents?

The state first argues that the DEB agents' entry was a valid extension of the search initiated by McCaslin, justified by what McCaslin observed in plain view in the closet. Under this construction of the facts there was not a separate search by the DEB agents but, rather, one long, uninterrupted search. Alternatively, the state argues that because the DEB agents did not touch or move any of the items there was not a new invasion of Defendant's privacy and therefore not an additional search. We reject both arguments.

First, we do not believe the record supports the state's first submission. The trial court ruled that McCaslin's initial warrantless entry was reasonable, and Defendant reluctantly conceded as much at oral argument. We agree that McCaslin's initial warrantless entry was justified as a protective sweep in response to exigent circumstances—a probable burglary in progress. *See State v. Fisher,* 141 Ariz. 227, 237, 686 P.2d 750, 760, *cert. denied,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). We also agree that McCaslin's observation and limited inspection of the items in the closet was a reasonable incidental encounter related to his protective and investigative sweep. *See State v. Greene,* 162 Ariz. 431, 433, 784 P.2d 257, 259 (1989). On this sparse record, we assume without deciding that the same may be said of the second warrantless entry and search with Sergeant Saylor.

It is conceded that McCaslin's and Saylor's observations did not provide probable cause to seek a warrant, and absent a continued exigency or other valid grounds, the justification for warrantless searching came to an end. *Fisher,* 141 Ariz. at 239, 686 P.2d at 762; *State v. Cook,* 115 Ariz. 188, 194, 564 P.2d 877, 883 (1977) (upon expiration of exigency justifying a warrantless entry and search and absent more than mere suspicion that items seen in plain view were stolen property, there is no justification for continued warrantless searching). The DEB agents' entry into Defendant's residence and

inspection of the items in the closet some forty-five minutes or more after McCaslin's entry was an intrusion into an area in which Defendant had a reasonable expectation of privacy and was a second and separate search. *See State v. Morrow,* 128 Ariz. 309, 312, 625 P.2d 898, 901 (1981) ("A search is an intrusion into an area in which a person has a reasonable expectation of privacy.") (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Second, and contrary to the state's alternative argument, the DEB agents' inspection of the items stored in the closet was also a search. Using the stool to manipulate themselves, rather than the items, so they could get a better view only served to aggravate that intrusion. *Cf. Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) (observation of stereo in plain view not a search but picking it up to get a view of serial numbers was a search). Moreover, the agents' observations were made for the purpose of discovering evidence of guilt to be used in a criminal prosecution. *See State v. Grijalva,* 111 Ariz. 476, 478, 533 P.2d 533, 535 (citing *Haerr v. United States,* 240 F.2d 533, 535 (5th Cir.1957) (a search can be defined as an examination of one's premises or person "with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action")), *cert. denied,* 423 U.S. 873, 96 S.Ct. 141, 46 L.Ed.2d 104 (1975). The fact that the DEB agents did not touch or move any of the items in the closet does not alter that purpose or reduce the impact their presence had on Defendant's privacy. *See Morrow,* 128 Ariz. at 312, 625 P.2d at 901. Thus, the DEB agents conducted a separate, warrantless search that must stand on some justification of its own, separate from McCaslin's initial entry and search.

## B. The DEB search

### 1. *Exigent circumstances*

■ Defendant, in his petition to this court,[1] contends that the DEB agents' war-

rantless entry and search was not justified by exigent circumstances and thus violated the provisions of art. II, § 8 of the Arizona Constitution.[2] A search conducted without a warrant is unconstitutional absent one of the specific and well-established exceptions to the warrant requirement. *State v. Castaneda,* 150 Ariz. 382, 389, 724 P.2d 1, 8 (1986).

■ The state argues that the dangerous nature of chemicals used to manufacture illegal drugs and the risk of fire or explosion constituted a set of exigent circumstances that justified the DEB agents' subsequent entry. We agree with the court of appeals that the officers' actions at the scene belie the *post hoc* assertion of this contention. *See DeWitt,* 182 Ariz. at 352, 897 P.2d at 654. Rather than taking appropriate safeguards consistent with the threat of fire or explosion, the police detained one suspect *in* the house and the other on the front walkway. Moreover, the police at the scene remained in, or within close proximity to, the house, never called the fire department, never evacuated the neighbors, and never attempted to ventilate the house. The officers' conduct makes the state's argument unpersuasive at best. Accordingly, the DEB agents' warrantless entry and search must be justified, if at all, on grounds other than exigent circumstances.

### 2. *Confirmatory searches*

■ The state argued and the court of appeals' majority found that although there was no exigency justifying the DEB agents' warrantless entry, the agents' actions were nonetheless justified because such actions "were only to confirm or refute McCaslin's suspicions of an illegal drug laboratory...." *DeWitt,* 182 Ariz. at 353, 897 P.2d at 655. We disagree.

The DEB agents' actions, under the court of appeals' rationale, epitomize the "search

---

1. In his petition, Defendant states:

    A "confirmatory search" such as that described in the facts of this case is not constitutionally permissible in Arizona. The dissent emphasized that the California case relied upon by the majority conflicts with the rights

of citizens under Article 2, Section 8 of the Arizona Constitution.
Petition for Review at 12.

2. "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Ariz. Const. art. II, § 8.

now, warrant later" theory of a warrantless confirmatory search. The court of appeals relied on *People v. Duncan*, 42 Cal.3d 91, 227 Cal.Rptr. 654, 720 P.2d 2 (1986), to bring the DEB agents' actions within Arizona's constitutional norms. We believe the court of appeals misconstrues *Duncan*. Taken as a whole, *Duncan* is a unique exigent circumstances case, not an approval of confirmatory searches.

*Duncan* is clearly distinguishable, as Judge Grant's dissent correctly observes. *DeWitt*, 182 Ariz. at 357–58, 897 P.2d at 659–60. In *Duncan*, it was unclear whether a drug laboratory was actually operating, the smell of ether was so strong that it made the first officer dizzy, and when the second officer entered he hurried the first officer out of the house because he feared an explosion. *Duncan*, 227 Cal.Rptr. at 655, 720 P.2d at 4. As already noted, the officers at Defendant's residence took no such action. In *Duncan*, continuing exigencies justified the ongoing presence of the officers attempting to deal with the problems. Here, the original exigency had lapsed. Moreover, the items were not contraband, they were not in use, and they could have been used for a number of lawful purposes.

■ The state concedes that prior to the DEB agents' entry and search they lacked probable cause to obtain a warrant. It follows, therefore, that the items' evidentiary value was not immediately apparent to McCaslin or Saylor. With no probable cause and no warrant, and the exigent circumstances justifying McCaslin's and Saylor's

warrantless entries having evaporated, the police were without justification to remain for an additional warrantless entry and search. *See Cook*, 115 Ariz. at 194, 564 P.2d at 883. The *Cook* rule does not permit the ongoing presence of officers waiting to confirm mere suspicion. As this court has stated previously, the Arizona Constitution provides broad protection "in preserving the sanctity of homes and in creating a right of privacy." *Bolt*, 142 Ariz. at 264–65, 689 P.2d at 523–24. "It is precisely a warrantless *entry* that constitutes the invasion of the home and the infringement of the right of privacy therein." *Martin*, 139 Ariz. at 474, 679 P.2d at 497.

### C. Good faith exception

■ Relying on the good faith exception to the exclusionary rule, the court of appeals also held that even if the search warrant was not supported by probable cause, the trial court properly admitted evidence of the items seized in the search that took place pursuant to the warrant.[3] The state, however, stipulated that the basis for probable cause in the affidavit used to secure the search warrant existed only by virtue of the information gained by the search of all the officers involved, including the DEB agents' warrantless entry and confirmatory search. In fact, the DEB agent who prepared the affidavit clearly relied on the observations and expertise of those DEB agents who entered Defendant's house.[4]

Having already determined that the DEB agents' warrantless entry and search were

---

**3.** The parties stipulated that the information obtained from all three searches was necessary to support issuance of the search warrant; therefore, we need not and do not decide whether the trial court correctly determined that the warrant was not supported by probable cause.

**4.** After reciting facts regarding McCaslin's and Saylor's entry and search, as reported to the DEB agent, the affidavit set forth the training and experience of the DEB agents with drugs, drug laboratories, and drug searches. The affidavit then stated:

> Upon entering [the bedroom] Officer McCaslyn [sic] pointed out the chemicals and glassware including beakers in the open cabinet above the closet.... Upon viewing the contents of this cabinet, [DEB agents] advised your affiant

that [the chemicals and glassware] are consistent with chemicals and glassware to manufacture the dangerous drug methamphetamine. The affidavit continued with a recitation of what the DEB agents collectively knew to be the common practice of persons who manufacture and sell methamphetamine but said nothing about Defendant. The affidavit then stated that

> the chemicals and glassware located within [the cabinet] are *not currently in a condition where they are manufacturing methamphetamine.*

(Emphasis added.)
The affidavit went on for another page and a half about the agents' experience and qualifications in handling drugs, executing drug searches, and dealing with persons involved in drug dealing, but it contained no specific information about Defendant or the status of his residence.

constitutionally impermissible, it follows that the search warrant, which relied on these very agents' observations to show probable cause, was invalid. The state cannot set up the good faith exception when, as here, the warrant upon which the police claim they relied in good faith was obtained as a direct result of their own unjustified warrantless entry. *See Commonwealth v. D'Onofrio*, 396 Mass. 711, 488 N.E.2d 410, 412 (1986) ("Even though there is no requirement that the affidavits themselves demonstrate that [the observations] were lawful, if as a matter of fact, the observations resulted from a violation of the defendants' Fourth Amendment rights, the observations cannot support the issuance of search warrants, and any evidence traceable to those observations must be suppressed."); *see also Maryland v. Macon*, 472 U.S. 463, 468, 105 S.Ct. 2778, 2781, 86 L.Ed.2d 370 (1985) (Fourth Amendment requires exclusion of evidence obtained by means of unreasonable search or seizure, or that is the fruit of unlawful arrest). As a leading commentator in the field noted in review of a case similar to this one:

> The questioned police activity ... was not performed pursuant to a warrant. *When the magistrate issued the warrant, he did not endorse past activity; he only authorized future activity.* As [*U.S. v.*] *Leon* [468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677] [(1984)] makes clear, the function of the magistrate is to determine "whether a particular affidavit establishes probable cause," not whether the methods used to obtain the information in that affidavit were legal. The [warrantless search] cannot be protected by incorporating the information thus obtained into a warrant application. Despite the police's good faith belief in its validity, the warrant is simply the fruit of a (warrantless) poisonous tree and the deterrent purpose of the exclusionary rule would be advanced by excluding [the evidence].

Craig M. Bradley, *The "Good Faith Exception" Cases: Reasonable Exercises in Futili-*

*ty*, 60 IND.L.J. 287, 302 (1985) (emphasis added).

Thus, we conclude that the evidence obtained in execution of the warrant was obtained in violation of the Arizona Constitution and should have been excluded at trial. *See State v. Ault*, 150 Ariz. 459, 465, 724 P.2d 545, 551 (1986). Defendant also raised federal constitutional claims and sought similar relief under both constitutions. We believe that our reasoning on the state constitutional issue is equally applicable to the claims raised under the Fourth Amendment and therefore conclude that the DEB agents' entry and so-called confirmatory search also violated the Fourth Amendment's prohibition against unreasonable search and seizure.

### D. The dissent

■ The belief expressed by the dissent[5] that "[t]his is not a case in which an argument under the Arizona Constitution was properly preserved," *post* at 471, 910 P.2d at 16, is premised on a view of the record and perceived standard for preserving state constitutional issues not shared by the court. Despite the dissent's view to the contrary, the record clearly and affirmatively shows Defendant's reliance on art. II, § 8 of the Arizona Constitution.

For example, Defendant's motion to suppress in the trial court specifically sought relief under "article 2, § 8 of the Arizona Constitution," as well as the Fourth Amendment. *See* Motion to Suppress at 1. This submission was in Defendant's motion, not some unrelated document.

In his memorandum in support of his motion, defense counsel again made clear his reliance on the Arizona Constitution. Under the caption "THE WARRANTLESS ENTRY AND SEARCH OF DEFENDANT'S HOME WAS UNLAWFUL," counsel argued that Arizona's constitution "is even more protective than its federal counterpart in safeguarding this fundamental liberty of Arizona citizens." Counsel then cited *Ault*, 150 Ariz. 459, 724 P.2d 545, *Bolt*, 142 Ariz. 260, 689

---

5. Assuming it is a dissent, as labeled. A careful reading indicates that the dissenting justice concurs in the result—that the evidence in question should have been suppressed—but believes that result should be based on the Fourth Amendment to the United States Constitution rather than the Arizona Constitution.

P.2d 519, and *Martin,* 139 Ariz. 466, 679 P.2d 489, all Arizona cases decided under art. II, § 8 of the Arizona Constitution.

It is true that the trial judge did not articulate a state constitutional basis for his ruling, but the dissent reads too much into this. In fact, the trial judge articulated *no* specific constitutional basis. He simply stated that the "court finds no constitutional violations by any of these officers." Minute Entry Nov. 12, 1991 at 1. Given Defendant's pleading specifically citing both the Arizona and United States Constitutions, the trial judge necessarily held that there was no violation of the Arizona Constitution.

Moreover, Defendant argued the greater protection of the Arizona Constitution, citing the relevant Arizona cases, in his opening brief in the court of appeals. Opening Brief at 10. The court of appeals understood that the state constitutional issue had been raised. In affirming, the majority acknowledged there was both a state and federal constitutional challenge and held that the "*state and federal constitutions do not prohibit* officers from backing each other up in such circumstances, or from drawing on each others' expertise and experience...." *DeWitt,* 182 Ariz. at 355, 897 P.2d at 657 (emphasis added). The dissenting judge was also aware of the state constitutional challenge and specifically stated that she believed there had been a *state* constitutional violation. *Id.* at 355, 357, 897 P.2d at 657, 659 (Grant, J., dissenting).

Defense counsel correctly preserved the issue in his petition for review. In arguing Issue B, the one we accepted for review, counsel stated:

> A "confirmatory search" such as that described in the facts of this case is *not constitutionally permissible in Arizona.* The [court of appeals'] dissent emphasized that the California case relied upon by the majority conflicts with the rights of citizens under *art. 2, § 8 of the Arizona Constitution.*

Petition for Review at 12 (emphasis added).

We require counsel to raise state constitutional issues, but do not require counsel to jump through hyper-technical hoops to do so.

It is more than sufficient when, as in the present case, counsel cites the specific article and section of the constitution relied on, cites the cases decided under it, and explicitly submits and relies on views of the Arizona Constitution expressed in the court of appeals' opinion and dissent. *See* Motion to Suppress at 1–4; Petition for Review at 12. The state constitutional issue having been adequately raised, it is our obligation, and only ours, to resolve it.

**DISPOSITION**

We vacate the court of appeals' opinion and reverse the trial court's ruling admitting into evidence the items found in Defendant's closet pursuant to the DEB agents' illegal confirmatory search and the invalid search warrant. This case is remanded to the trial court for further proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.

MARTONE, Justice, dissenting.

This is a close case under the Fourth Amendment to the United States Constitution. This is not a case in which an argument under the Arizona Constitution was properly preserved. Yet, the majority's opinion is crafted as though it were, in an effort, I believe, to immunize this close question from federal judicial review. In my opinion, there is no adequate and independent state ground for the decision. This case affords us no opportunity to reach the state constitutional question, and we should not, because as this court has said, "one of the few things worse than a single exclusionary rule is two different exclusionary rules." *State v. Bolt,* 142 Ariz. 260, 268, 689 P.2d 519, 527 (1984).

**I.  The State Constitutional Issue Was Not Properly Preserved**

Contrary to the majority's statement of the issue, we granted review on issue B only, which was: "[w]as the Court of Appeals wrong in holding that the additional warrantless entries and confirmatory searches of Appellant's home were newly justified upon dis-

covery of materials whose evidentiary value was not immediately apparent?" Petition for review at 2. We did not grant review on issue A, which specifically referred to both "the Fourth Amendment to the Constitution of the United States and the Arizona Constitution Article 2, Section 8." *Id.*

That part of the memorandum in support of the defendant's motion to suppress that related to issue B did not rely upon Article 2, § 8. As with many such motions, no effort was made to distinguish between the Fourth Amendment, the state constitution, and cases decided under the Fourth Amendment and the state constitution. In denying the motion to suppress, the trial judge did not rely on the state constitution, minute order of Nov. 7, 1991, and in denying the motion for reconsideration, he relied specifically on federal constitutional law. Minute Order of Dec. 20, 1991.

The defendant's opening brief in the court of appeals made no express mention of Article 2, § 8 of the Arizona Constitution anywhere, let alone in that portion of the brief that related to the issue upon which review was granted. The brief treated our cases, those in the United States Supreme Court, and cases in the California Supreme Court as though they were interchangeable.

Taking his que from the dissenting opinion in the court of appeals, the defendant referred to that dissent in the portion of his petition for review that related to the issue upon which review was granted, but, as in the courts below, mounted no argument based upon the Arizona Constitution. As is so often the case, this case was argued generically, with generous references to the opinions of the United States Supreme Court and some opinions of this court, as though all search and seizure issues were fungible.

We have said before that where "[t]he defendant makes no separate argument based on the state constitutional provision . . . we do not separately discuss it." *State v. Nunez*, 167 Ariz. 272, 274 n. 2, 806 P.2d 861, 863 n. 2 (1991). And we have said before

that where a defendant relies solely on the federal constitution in his argument to the court of appeals, we would not separately discuss the state constitution. *Taylor v. Sherrill*, 169 Ariz. 335, 338, 819 P.2d 921, 924 (1991).

In my view, on this record, a state constitutional basis for the issue upon which review was granted was never properly raised or preserved. Let me turn then to why it matters.

## II. The Fourth Amendment and the State Constitution

One could reasonably conclude, as the court of appeals did here, that the so called confirmatory search in this case was reasonable. After all, the initial warrantless entry was, as the majority acknowledges, justified by exigent circumstances, and one could reasonably argue that the confirmatory search added no constitutionally recognizable quantum of further intrusion into the defendant's privacy. Thus, if reasonableness alone were the test under the Fourth Amendment, then, as argued by Justice Scalia in *California v. Acevedo*, 500 U.S. 565, 581–85, 111 S.Ct. 1982, 1992–94, 114 L.Ed.2d 619 (1991) (Scalia, J., concurring), there would simply be no Fourth Amendment violation here. That his view did not prevail suggests that under the Fourth Amendment a warrant is required in certain cases even where a search is otherwise reasonable.[1] Yet, Fourth Amendment law is fluid. *See, e.g., Soldal v. Cook County*, 506 U.S. 56, 71, 113 S.Ct. 538, 549, 121 L.Ed.2d 450 (1992) (" 'reasonableness is still the ultimate standard' under the Fourth Amendment"). *See also, United States v. Santiago*, 846 F.Supp. 1486, 1489–90 (D.Wyo. 1994) ("Although Justice Scalia's concurrence in *Acevedo* was not joined by any other Justices, the Court's most recent cases interpreting the Fourth Amendment have started down Justice Scalia's path.").

Unlike the Fourth Amendment, Article 2, § 8 of the Arizona Constitution has no warrant clause. It would thus be anomalous to

---

1. The majority here, however, treats this case as though it raises only a state constitutional issue. It fails to analyze this case under the Fourth Amendment, and thus affords me no basis to concur in its perfunctory resolution of the federal issue. *See ante*, at 70, n. 5, 910 P.2d at 15, n. 5.

have a reasonableness test, and not a *per se* warrant requirement, under the Fourth Amendment, yet require a warrant under the Arizona Constitution. That is why it is important for us to decide this case under the Fourth Amendment. Our goal is "to keep the Arizona exclusionary rule uniform with the federal." *State v. Bolt*, 142 Ariz. 260, 269, 689 P.2d 519, 528 (1984). As this court has said, "[i]t is poor judicial policy for rules governing the suppression of evidence to differ depending upon whether the defendant is arrested by federal or state officers." *Id.*

By deciding this case as though it were predominately one under the state constitution, the majority seeks to immunize its decision from federal judicial review.[2] But this is a close case. If we are wrong about it, we should want the Supreme Court to have an opportunity to review it because we would not want a state rule to be more restrictive than the federal rule in this area for all the reasons this court stated so ably in *State v. Bolt*, 142 Ariz. at 268–69, 689 P.2d at 527–28. If it is still true that we do not want to exclude more evidence under the Arizona Constitution than we have to under the Fourth Amendment, then it is "poor judicial policy," *id.* at 269, 689 P.2d at 528, to decide a state constitutional issue that is not properly preserved.

III. Conclusion

There are countless ways in which state rules of decision ought to diverge from their federal counterparts. A healthy respect for federalism counsels against lock-step uniformity. But the exclusionary rule was imposed upon the states through the Fourteenth Amendment incorporation process. It is thus not within that range of state interests in which we would want to go beyond the requirements of federal law. We should decide this case solely under the Fourth Amendment. If we are right about its resolution, we shall be consistent with federal law. But if we are wrong about its resolution under federal law, and decide the state issue, we run the risk of excluding more evidence than is required with no countervailing attendant benefit. I thus respectfully dissent.

---

**2.** The existence of an adequate and independent state ground for a decision will prevent the United States Supreme Court from reviewing a state court's resolution of a federal issue. *See generally*, Robert L. Stern et al., Supreme Court Practice §§ 3.21–3.24, at 140–58 (7th ed. 1993). But as Justice O'Connor noted, "[i]f a state court holds that a particular state action violates state law *because* it violates a parallel provision of federal law, then the Supreme Court has power to review the case." Sandra Day O'Connor, *Our Judicial Federalism*, 35 Case W.Res.L.Rev. 1, 6 (1984) (citing *Zacchini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977); *United Air Lines v. Mahin*, 410 U.S. 623, 93 S.Ct. 1186, 35 L.Ed.2d 545 (1973)). This court has stated that it is its policy to "keep the Arizona exlusionary rule uniform with the federal. We therefore do not propose to make a separate exclusionary rule analysis as a matter of state law in each search and seizure case." *State v. Bolt*, 142 Ariz. 260, 269, 689 P.2d 519, 528 (1984). To be sure, we said this in connection with the exclusionary rule and not the substantive right it purports to enforce, but the result is the same. At a minimum, it is unclear whether there is an independent state ground here, and therefore our resolution of the federal issue ought to be reviewable. *See Michigan v. Long*, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).