547 P.2d 62

**The STATE of Arizona, Appellant,**

v.

**Tony A. MARTINEZ and Andrew E. Garcia, Appellees.**

**No. 2 CA–CR 753.**

Court of Appeals of Arizona,
Division 2.

March 23, 1976.

Rehearing Denied April 27, 1976.
Review Granted May 11, 1976.

Dennis DeConcini, Pima County Atty. by John W. Dickinson, Deputy County Atty., Tucson, for appellant.

Scott W. Schlievert, Tucson, for appellee Martinez.

Healy & Beal, P.C. by Robert L. Beal, Jr., Tucson, for appellee Garcia.

## OPINION

HOWARD, Chief Judge.

This is an appeal by the State from an order granting appellees' motion to suppress. Two issues are presented: Did the police lawfully stop the car occupied by appellees? Did the use of a "narcotics dog" constitute an unreasonable search?

The events which culminated in appellees' arrest commenced in the late afternoon of July 17, 1975, when Sgt. Werner Wolf of the Metropolitan Area Narcotics Squad received a tip from a confidential informant with whom Wolf had previous experience and regarded as reliable. The informant told Officer Wolf that he had seen a large quantity of marijuana at the residence at 4001 South Mission Road in Tucson, Arizona and that he believed that the marijuana most likely would be sold that evening from the residence. Officer Wolf relayed this information to Officers Escuda, Crossman, Harris and Lawrence, all members of the Metropolitan Area Narcotics Squad. Officers Crossman, Harris and Escuda were requested by Wolf to place the house under surveillance until a search warrant could be obtained.

Crossman and Harris began their surveillance at 6:15 p. m. Officer Escuda positioned himself in his vehicle at an intersection near the house. At 6:20 p. m., Officer Crossman observed a 1963 white Chevrolet Impala with four teenage males of Mexican descent arrive at the residence. Two persons left the vehicle, went inside and came out within five minutes. One of them was carrying a small object measuring about 12″ × 6″ and wrapped in green plastic. On the basis of his previous experience, Officer Crossman believed the substance in the green wrapping was marijuana. He relayed his observations to two other members of the Metropolitan

Area Narcotics Squad by radio and gave them a description of the vehicle leaving the residence. This vehicle was stopped a short time later. A search of the vehicle produced one brick of marijuana and the occupants of the vehicle were placed under arrest. Other members of the narcotics squad were advised of this occurrence by radio.

Just before 7:00 p. m., Officer Crossman observed a large male of Mexican descent leave the residence. The subject got into a white Dodge pickup and drove north on Mission Road until he came to Hardy's Drive-Inn Restaurant located just east of the intersection of Mission Road and Ajo Way. There he met with a subject in a white Pontiac. The two subjects returned to the residence in the white Pontiac. They went inside for about five minutes and then departed.

At about 7:15 p. m. Officer Crossman observed a white over maroon Mercury approach the residence via an alley in the rear and pull into the rear of the residence. Officers Crossman and Harris lost sight of the vehicle after it went behind the residence and did not observe it again until about 8:00 p. m. when it left. Officer Crossman informed other agents in the area of the departure of the vehicle. These agents in turn advised Officer Lawrence (who had arrived on the scene at approximately 7:00 p. m.) to have the vehicle stopped in order to check it for possible marijuana. The stop was accomplished by a uniformed unit near the intersection of Ajo and Park. Appellee Martinez was driving the vehicle and appellee Garcia was a passenger. In the meantime, a search warrant was obtained, the house was searched, and marijuana was discovered inside the residence.

After the automobile had been stopped, Officer Lawrence arrived with his narcotics dog. The officer gave his dog a command and the dog sniffed the trunk. The dog came to an "alert" position indicating the presence of a narcotics substance. The trunk of the automobile was then opened and four green trash bags containing marijuana were found inside. Officer Crossman subsequently arrived on the scene and appellee Martinez told him that he had gone to the residence on Mission Road to purchase one hundred pounds of marijuana.

It is appellees' contention that the officers had no reason to stop the vehicle. The State argues that while the police officers may have lacked probable cause, they had sufficient cause to stop the car in order to investigate.

In *State v. Baltier*, 17 Ariz.App. 441, 448, 498 P.2d 515, 522 (1972), we set forth the test regarding forced stops for interrogation or investigative purposes:

> "There must be a rational suspicion by the police officer that some activity out of the ordinary is or has taken place, some indication to connect the person under suspicion with the unusual activity, and some suggestion that the activity is related to crime."

In *State v. Taras*, 19 Ariz.App. 7, 504 P.2d 548 (1972), we applied the *Baltier* test to a situation involving the forced stopping of vehicles.

As is stated in *Wilson v. Porter*, 361 F.2d 412, 415 (9th Cir. 1966):

> "A line between reasonable detention for routine investigation and detention which could be characterized as capricious and arbitrary cannot neatly be drawn. But due regard for the practical necessities of effective law enforcement required that the validity of brief, informal detention be recognized whenever it appears from the totality of the circumstances that the detaining officers could have had reasonable grounds for their action. A founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing."

When the totality of circumstances are viewed in this case, we believe that the *Baltier* test has been met. While the offi-

cers did not observe anything being loaded into the vehicle, the action of the appellees in proceeding to the rear of the house, at nighttime, together with what had previously occurred, gave the officers the well-founded suspicion necessary to stop the automobile.

■ The use of the "narcotics dog" under these circumstances did not constitute a search. *State v. Quatsling*, 24 Ariz.App.

105, 536 P.2d 226 (1975); *United States v. Fulero*, 162 U.S.App.D.C. 206, 498 F.2d 748 (1974); *United States v. Bronstein*, 521 F.2d 459 (2nd Cir. 1975).[1]

The order granting the motion to suppress is set aside and the case is remanded to the trial court for further proceedings.

KRUCKER and HATHAWAY, JJ., concur.

1. Contra, *United States v. Solis*, 393 F.Supp. 325 (D.C.Cal.1975), see also *People v. Williams*, 51 Cal.App.3d 346, 124 Cal.Rptr. 253 (1975), where the officers were trespassers at the time of the search.