604 P.2d 654

**STATE of Arizona, Appellant,**

v.

**Bennie Floyd EASON, Appellee.**

No. 1 CA–CR 3794.

Court of Appeals of Arizona,
Division 1.

Sept. 20, 1979.

Rehearing Denied Dec. 14, 1979.

Review Denied Jan. 3, 1980.

Ross P. Lee, Maricopa County Public Defender, by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellee.

Charles F. Hyder, Maricopa County Atty., by Terry H. Jennings, Deputy County Atty., Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

This is an appeal by the State of Arizona from the trial court's order granting appellee's motion to suppress the use in evidence of a pistol found under the front seat of his car. Appellee/defendant Bennie Floyd Eason was charged with possession of a pistol by a felon in violation of former A.R.S. § 13–919. After the motion to suppress was granted, the action was dismissed on motion of the State.[1]

On May 27, 1978, at approximately 7:45 p.m., Phoenix police officers received an anonymous tip that the defendant, a white male, had just left his home with a gun in a 1967–69 Mustang, light blue in color and that he would be going to one of two named bars to shoot someone because he had just lost a fight. A follow-up broadcast confirmed that the defendant owned a 1967 Mustang and its license number was given. Two police officers in marked patrol cars immediately went to one of the bars and parked beside it. Shortly thereafter, the defendant's car was seen to approach the bar, slow down as if to turn in and then rapidly accelerate back into traffic. The police officers signaled for the defendant to pull his car to the side of the road and he parked in a vacant lot. As he was stopping, the officers saw him reach down with his right hand in the direction of the bottom of the seat. They parked their cars beside the road and one officer exited with his gun drawn and ordered the defendant from his car. As the defendant got out of his car, the officer noted that he had a bruised eye and appeared to have been in a fight. One of the officers immediately proceeded to the

---

1. The State correctly notes that when the motion to suppress was granted the State had the option of proceeding to trial or dismissing the action and appealing from the adverse ruling. *State v. Million,* 120 Ariz. 10, 583 P.2d 897 (1978).

defendant's automobile, reached underneath the driver's seat and pulled out the pistol which was the subject of the motion to suppress.

The State presents two arguments in support of the search of appellant's car and seizure of the pistol. First, citing *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the State argues that the information supplied by the undisclosed informant coupled with the corroborating evidence by the independent observations of the officers was sufficient to meet the standards of probable cause set forth in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Second, the State urges that the car was properly searched incidental to the defendant's arrest for driving while intoxicated. Because we conclude that the search was based upon probable cause, we need not reach the second issue.

In the trial court, and obliquely in the answering brief, the defendant asserts that both the initial stop of his car and the subsequent search were unlawful because they were not based upon probable cause. The State has focused on the incident as a whole, making no distinction between the initial stop and the subsequent search. If probable cause was the standard applicable to the initial stop, we would be inclined to affirm the trial court's ruling. At the time the defendant was stopped the only corroboration of the tip was the fact that he owned a 1967 Mustang and on that evening considered going to a bar named by the informant. This did not link him with criminal activity but was mere innocuous detail which could have been known by anyone who had been with the defendant that evening. *State v. White*, 122 Ariz. 42, 592 P.2d 1308 (App.1979). This was far short of the facts in *State v. Watkins*, 122 Ariz. 12, 592 P.2d 1278 (App.1979), relied upon by the State. In *Watkins*, the undisclosed informant's tip that the defendants were going to rob a specified house that evening and would be driving a particular car was corroborated by officers who not only saw the car at the house at that time

in the evening but watched while the defendants took a television set and a stereo out the side of the darkened house.

■ When the defendant's car was stopped there is no question that there was a "seizure" within the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976). Beginning with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it has been recognized that in appropriate circumstances the Fourth Amendment permits a limited search or seizure on facts that do not constitute probable cause. The test is expressed in terms of "reasonable suspicion" to believe that criminal activity is afoot. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976). The rationale was aptly expressed in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) where it was held that the officer was justified in approaching the defendant seated in a parked automobile to investigate a tip that he was carrying narcotics and a gun. The Court stated:

> "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Id.* at 145–46, 92 S.Ct. at 1923, 32 L.Ed.2d at 616–17.

This rationale has been applied to persons driving automobiles even though the infringement on the Fourth Amendment is greater than where the person is walking the streets as in *Terry v. Ohio, supra*, or parked in an automobile as in *Adams v.*

*Williams, supra. See United States v. Brig-noni-Ponce, supra* (roving patrols near border, although not authorized to make random stops, can stop if officer has reasonable grounds to believe that automobile contains illegal aliens or is engaged in smuggling); *Delaware v. Prouse, supra* (random stop for license or registration check not authorized but stop permissible where an articulable and reasonable suspicion exists that motorist is unlicensed or automobile is not registered). This standard has also been applied in Arizona to forced stops of automobiles. *State v. Martinez,* 26 Ariz.App. 210, 547 P.2d 62 (1976), aff'd. and opinion adopted, 113 Ariz. 345, 554 P.2d 1272 (1976).

In the instant case, when the officers saw the defendant's car approach the bar, slow down and then accelerate away, this, coupled with the tip received from the unidentified informant, constituted sufficient grounds for them to believe that criminal activity might be afoot and to make a limited stop for the purpose of further investigation.

Having determined that the stop was lawful, the next question is whether the total circumstances revealed by the officers' investigation provided sufficient corroboration of the informant's tip to give probable cause to search the vehicle and seize the pistol. *See Draper v. United States, supra; State v. White, supra; State v. Watkins, supra.* We believe that it did. Not only was the appellant at the bar at the time given by the informant but, when he was stopped, the officers noticed that he had a bruised eye and appeared to have been in a fight recently. In addition, as he was stopped, the officers noted that he leaned forward as if to place something under the seat with his right hand. This was more than "innocuous detail" as in *State v. White, supra,* and elevated the facts to the point that probable cause existed to believe the defendant was carrying a concealed weapon. At that point, the officers were justified to reach under the seat not only to search for contraband but for their own protection.

The order granting the motion to suppress is reversed.

WREN, J., concurs.

SCHROEDER, Presiding Judge, dissenting.

Acting upon an anonymous informant's tip that the appellant was about to enter a bar and shoot someone, the police stationed themselves by the bar and observed the appellant's car approach the bar and then reenter the stream of traffic. The conduct which the police officers observed was not suspicious or out of the ordinary, and would not have justified a stop. The majority nevertheless concludes that the conduct, in and of itself innocuous, when coupled with an anonymous tip, justified the stop. This is a result with which I cannot agree.

The use of informants' tips to justify police intrusions is a subject which has received much attention and about which clear rules have been etched. Those requirements are vital to protecting citizens from police harassment based on the gossip and innuendo inherent in anonymous tips. They were recently reaffirmed by this Court in *State v. White,* 122 Ariz. 42, 592 P.2d 1308 (App.1979). First, the informant himself must be known by the police to be reliable, *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Second, the information must indicate that the informant came by his information in a reliable way. *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

The tip in this case did not meet either test. The police did not know the informant to be reliable; indeed they did not even know his identity. The tip itself gave no indication whatsoever that the information had been obtained in a reliable way. It is true that in some limited situations, courts have permitted a plethora of independently observed corroborating evidence to substantiate an otherwise deficient tip. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). However, I cannot accept the majority's inherent assumption that the minimal "corroboration" in this case can replace both the requirements of *Aguilar* and *Spinelli.*

**394**

Certainly none of the cases cited by the majority support such a proposition. In *Draper*, not only was the corroborating detail greater than that present here, but, more important for purposes of this case, the informant was known to the police and known to have been reliable. In *State v. Martinez*, 26 Ariz.App. 210, 547 P.2d 62 (1976), the informant was also known and known to have been reliable. In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the informant personally approached police officers, and the police identified him as a known and reliable informant before acting upon his tip to investigate the defendant parked nearby. What is more, Justice Rehnquist in *Adams v. Williams, supra,* carefully distinguished that case from a police action based on an anonymous phone tip. That opinion undermines the majority's conclusion that the police may, on the basis of an anonymous tip, intrude upon the liberty of a citizen whose conduct otherwise would not warrant suspicion.

Even if the initial stop could be justified, there remains nothing in appellant's conduct either before or after the stop which would justify the warrantless search of the vehicle. The majority suggests that the search was somehow necessary for the police officer's protection. The suggestion is groundless. The car was searched just before appellant was placed under arrest for DWI and while he was standing with a second police officer at the rear of the vehicle. The State has understandably made no attempt to justify the search on such grounds. The trial court's ruling in this matter was correct and should, in my opinion, be affirmed. I therefore respectfully dissent.