EL PUEBLO DE PUERTO RICO, acusado y recurrido, *v.* MIGUEL A. GARCÍA COLÓN, peticionario.

*Número:* CE-86-471      *Resuelto:* 30 de junio de 1988

*Felipe Cirino Colón,* abogado del peticionario; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

## SENTENCIA

Un agente de la Policía de Puerto Rico recibió por la vía telefónica una *confidencia anónima* a los efectos de que dos personas transitaban en determinado vehículo de motor por

las inmediaciones de un garaje de gasolina en la entrada de la Urb. Round Hill, Río Piedras, Puerto Rico, portando ilegalmente un arma de fuego que había sido hurtada a un miembro de dicha fuerza policíaca. El confidente, alegadamente, brindó una descripción tanto de dichas personas como del vehículo en cuestión. Al otro día de recibir dicha confidencia, y en horas de la tarde, dicho agente en unión a otro compañero pudo observar, en las inmediaciones del lugar mencionado, un vehículo igual al descrito en el cual transitaban dos personas que correspondían a la descripción brindada en la confidencia. Éstas no se encontraban en ese momento cometiendo delito alguno. Los agentes procedieron, como consecuencia de la confidencia recibida, a detener el vehículo. Se acercaron al mismo. Mientras uno de ellos requirió del conductor del vehículo las correspondientes licencias, el otro se acercó al vehículo por el lado del pasajero. Éste pudo observar un cono de papel blanco cerrado en el interior del vehículo. El agente, *pensando* que el mismo podía contener una droga narcótica, ocupó dicho cono. Al abrirlo pudo notar que el mismo, según su experiencia, contenía picadura de supuesta marihuana. Los ocupantes del vehículo fueron arrestados. Un registro del automóvil por parte de uno de los agentes tuvo como resultado la ocupación de un arma de fuego debajo del asiento delantero.

El Estado presentó pliegos acusatorios contra los ocupantes del vehículo imputándoles una violación a la Ley de Sustancias Controladas de Puerto Rico, Art. 404 (24 L.P.R.A. sec. 2404); violación a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, y una infracción al Art. 168 del Código Penal vigente, 33 L.P.R.A. sec. 4274.

Expedimos auto de *certiorari* para revisar una resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Carolina, mediante la cual se declaró sin lugar una moción de

supresión de evidencia que presentara uno de los ocupantes del vehículo, el aquí peticionario Miguel A. García Colón.

## I

Un examen de los hechos relatados —los cuales no están en controversia— y de los correspondientes alegatos presentados por las partes nos convence de que procede revocar la resolución emitida por el tribunal de instancia mediante la cual se declaró sin lugar la supresión solicitada. Resulta evidente que los agentes del orden público no tenían "motivos fundados" para intervenir con, y arrestar, a los ocupantes del vehículo en controversia. *Pueblo v. Rey Marrero*, 109 D.P.R. 739 (1980); *Pueblo v. Alcalá Fernández*, 109 D.P.R. 326 (1980). Procede la supresión de la evidencia ocupada con motivo del arresto y registro efectuado.

Por las razones antes expresadas, *se dicta sentencia revocatoria de la resolución recurrida emitida por el Tribunal Superior de Puerto Rico, Sala de Carolina, y se devuelve el caso a dicho foro para procedimientos ulteriores compatibles con lo aquí resuelto.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Rebollo López emitió opinión concurrente. El Juez Asociado Señor Negrón García emitió opinión disidente, a la cual se unen los Jueces Asociados Señores Ortiz y Alonso Alonso.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Respecto a la facultad de un agente del orden público para arrestar, sin orden judicial previa, a un ciudadano a

base de una confidencia, en *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 354 (1977), establecimos la norma general de que "una *confidencia es suficiente para validar la existencia de causa probable* si se establece la concurrencia de *una* o más de las siguientes circunstancias: 1) que el confidente previamente ha suministrado información correcta; 2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes[,] y 4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse". (Énfasis suplido.)[1]

En garantía de los derechos protegidos por el Art. II, Sec. 10 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 299 —la cual establece, en lo pertinente, que sólo "se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, *y ello únicamente cuando exista causa probable apoyada en juramento o afirmación*" (énfasis suplido)— modificaríamos la referida norma. Utilizando básicamente los mismos criterios, estableceríamos una norma aplicable a la situación de hechos en que el confidente es uno "confiable" —desde el punto de vista que dicho confidente es uno conocido por la Policía, por cuanto ha brindado previamente información que ha resultado correcta (creíble), o cuando la información brindada por ese confidente pueda constituir una declaración contra el interés penal de éste (confiable)— y una segunda norma para los casos en que el confidente no lo es.

I

La prueba presentada por el Ministerio Público durante la vista de supresión celebrada ante el tribunal de instan-

---

[1] Dicha norma fue reiterada en *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770 (1982).

cia(2) fue a los efectos de que el día 27 de diciembre de 1985 un agente del Cuerpo de Investigaciones Criminales de la Policía de Puerto Rico de nombre Miguel Oliveras alegadamente recibió una llamada telefónica —proveniente de una persona que no se identificó y cuyo sexo no recordaba— donde se le informó que dos individuos, conocidos por Gilberto y "Mickey", portaban un revólver hurtado a una mujer policía en un vehículo de motor, cuya descripción le brindaron, y que los mismos frecuentaban una estación de gasolina Mobil en la entrada de la Urb. Round Hill, Río Piedras, Puerto Rico. Dicho agente no plasmó dicha información en ningún libro o documento oficial de la Policía de Puerto Rico; verbalmente se la informó a su compañero, el agente Carlos Carrión, no realizando ninguno de los dos agentes gestión alguna en dicho día respecto a la confidencia recibida. No se corroboró en ninguna forma dicha información.(3) En horas de la tarde del día 28 de diciembre de 1985 los agentes Oliveras y Carrión —vistiendo de civil y utilizando un carro oficial no rotulado— pudieron observar el vehículo descrito en la confidencia en el área de estacionamiento del Centro Comercial Plaza Trujillo, cerca de un Burger King. Se percataron de que en dicho automóvil transitaban dos personas: "Mickey", quien iba guiando, y "Gillito", a quien el agente Oliveras conocía.

Admitió el agente Oliveras que en ese momento dichas personas no estaban cometiendo delito público alguno. Ello no obstante, dichos agentes procedieron a detener el auto-

---

(2) En el descargo de su obligación, en ausencia de orden judicial previa, de demostrar la legalidad y razonabilidad de la actuación de los agentes del orden público. *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986).

(3) Dicho agente no hizo esfuerzo alguno por corroborar si efectivamente un miembro de la fuerza policiaca había sido objeto del hurto de un revólver oficial; no corroboró a quién pertenecía el vehículo de motor, cuya tablilla le habían informado; tampoco se dirigió ese día al área especificada en la confidencia suministrada.

móvil, identificándose como policías. Las dos personas obedecieron todas sus instrucciones, no oponiendo resistencia de clase alguna. El agente Oliveras solicitó la licencia de conductor y la del auto, comprobando que todo estaba en orden. Mientras ello sucedía, el agente Carrión se acercó al vehículo por el lado del pasajero, pudiendo observar en la consola en donde está empotrada la palanca de los cambios *un cono de papel blanco cerrado por la parte de arriba con "tape" transparente.* El agente Carrión, "por su experiencia", al verlo *pensó* que podría contener droga. Introdujo la mitad de su cuerpo dentro del carro para ocupar el cono. Luego de abrirlo, pudo observar que en el cono había picadura de supuesta marihuana. Carrión le ordenó a los dos jóvenes que se bajaran del auto, "poniéndolos bajo arresto", no encontrando evidencia delictiva alguna al registrarlos. Estando los individuos bajo arresto y fuera del carro, el agente Oliveras registró el automóvil, encontrando debajo del asiento del pasajero un revólver niquelado, de cañón corto, con cachas de madera, cargado con seis balas, el cual luego comprobó que efectivamente había sido hurtado a una mujer policía.

## II

Habiendo sido declarada sin lugar una moción de supresión de evidencia que el peticionario Miguel A. García Colón, c/p "Mickey", radicara ante el Tribunal Superior de Puerto Rico, Sala de Carolina —ello en relación con unos pliegos acusatorios en que se le imputó una infracción al Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404, a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, y una infracción al Art. 168 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4274—[4] el referido peticionario acudió ante este Tribunal

---

[4] Recibo de bienes apropiados ilegalmente.

mediante la radicación del correspondiente recurso de *certiorari*. En el mismo le imputó al tribunal de instancia el haber errado

> ... al resolver que en este caso había motivos fundados para detener, registrar y arrestar al Peticionario, así como para registrar el automóvil conducido por éste, todo ello sin orden judicial para esos fines. Petición de *certiorari*, pág. 6.

Mediante resolución de fecha 2 de octubre de 1986 este Tribunal expidió el auto de *certiorari* solicitado. En el día de hoy el Tribunal, mediante sentencia, revoca la referida resolución. Entendemos necesario exponer, por separado, nuestra posición, producto la misma de una profunda preocupación sobre la corrección de la norma establecida en *Pueblo v. Díaz Díaz*, ante.

## III

Si bien es correcto que la Policía de Puerto Rico, en protección de la ciudadanía en general y en el descargo responsable de su función, viene en "la obligación de investigar toda llamada telefónica recibida o información brindada por dicha ciudadanía referente a posible actividad delictiva", (énfasis suprimido) *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144 (1985), no es menos cierto que, como expresáramos hace más de treinta años en *Pueblo v. Fournier*, 77 D.P.R. 222, 262 (1954), "el concepto de 'detención para investigación' de un acusado potencial es desconocido en nuestro derecho".

Y es que existe una abismal diferencia entre el derecho que tienen los agentes del orden público a investigar toda querella sobre posible actividad delictiva y el derecho a intervenir con y privar de su libertad a un ciudadano. *En nuestra jurisdicción, un agente del orden público puede arrestar a una persona* —en ausencia, naturalmente, de una orden de arresto expedida por tribunal competente— *únicamente cuando dicho agente tiene "motivos fundados" para así ha-*

*cerlo al amparo de las disposiciones de la Regla 11 de Pro-cedimiento Criminal,* 34 L.P.R.A. Ap. II.

Hemos resuelto que la "frase 'motivos fundados' es sinó-nima de 'causa probable'" de la que habla el citado Art. II, Sec. 10 de nuestra Carta de Derechos, ante. *Pueblo v. Díaz Díaz,* ante, pág. 353. No podemos perder de vista que la "causa probable" se determina a base de criterios de proba-bilidad y razonabilidad, y que es doctrina firmemente esta-blecida en nuestra jurisdicción que esa determinación tiene que basarse en hechos y no en meras sospechas. *Pueblo v. Rey Marrero,* 109 D.P.R. 739 (1980); *Pueblo v. Lastra Sáez,* 93 D.P.R. 876 (1967); *Pueblo v. Fournier,* ante. Hemos esta-blecido, por otro lado, que un agente del orden público tiene motivos fundados para arrestar a un ciudadano al entrar en posesión de aquella información o conocimiento que lleva a una persona ordinaria y prudente a creer que la persona a ser arrestada ha cometido un delito público. *Pueblo v. Alcalá Fernández,* 109 D.P.R. 326 (1980); *Pueblo v. Lafontaine Ál-varez,* 98 D.P.R. 75 (1969); *Cepero Rivera v. Tribunal Supe-rior,* 93 D.P.R. 245 (1966); *Pueblo v. Cabrera Cepeda,* 92 D.P.R. 70 (1965). Véase, en adición, *McCray v. Illinois,* 386 U.S. 300 (1967).

Las disposiciones del Art. II, Sec. 10 de nuestra Carta de Derechos, ante, y la doctrina sobre la materia vigente en nuestra jurisdicción hacen necesario que modifiquemos la norma enunciada en *Pueblo v. Díaz Díaz,* ante, por cuanto la misma, a nuestro juicio, resulta ser inconstitucional, *ya que permite la intervención y arresto de una persona por parte de agentes de la Policía de Puerto Rico sin que exista la "causa probable o motivos fundados" para así hacerlo* que requieren tanto la antes mencionada disposición constitucio-nal como la jurisprudencia de este Tribunal sobre la materia.

Como podemos notar, a los fines de la aplicación de la norma implantada en *Pueblo v. Díaz Díaz,* ante, no importa la clase de confidencia que se reciba por la Policía; en otras

palabras, da lo mismo que la confidencia haya sido brindada por una persona que anteriormente haya suministrado información correcta; o que sea una confidencia que conlleve una declaración contra el interés penal del confidente; o que se trate de una confidencia anónima. La razón para ello es obvia: dicha norma no exige, o define, una confidencia en particular; establece que la confidencia, cualquiera que ésta sea, será suficiente para validar la existencia de causa probable para el arresto si, *en adición*, se da *"uno o más"* de cualesquiera de los cuatro criterios señalados. Ello, a nuestro juicio, es erróneo por cuanto ninguno de los referidos criterios es suficiente, *por sí solo*, para establecer la información o conocimiento necesario que llevaría a un agente del orden público "ordinario y prudente" a creer que el ciudadano a ser arrestado ha cometido un delito público, esto es, a tener "motivos fundados" para arrestarlo. Véanse: *Pueblo v. Alcalá Fernández*, ante; *Pueblo v. Lafontaine Álvarez*, ante; *Cepero Rivera v. Tribunal Superior*, ante; *Pueblo v. Cabrera Cepeda*, ante.

Dicho de otra manera, bajo la norma establecida en *Pueblo v. Díaz Díaz*, ante, todo lo que se requiere para que un tribunal legitimice el arresto efectuado a base de una confidencia es que éste haga dos sencillas determinaciones. En primer lugar, determine que efectivamente la Policía recibió una confidencia sobre alegada actividad delictiva en relación con la persona arrestada y, en segundo lugar, e independientemente de la clase de confidencia recibida, *meramente determine si se dio uno de los cuatro criterios señalados en la misma*, esto es: (1) si dicho confidente anteriormente había suministrado información correcta *o* (2) si la confidencia recibida condujo hacia el criminal en términos de lugar y tiempo, etc.

La norma a ser aplicada como guía por nuestros tribunales en casos de confidencias *necesariamente tiene que cumplir* con lo preceptuado y exigido por el Art. II, Sec. 10

de nuestra Carta de Derechos, ante, y por la Regla 11 de Procedimiento Criminal, ante. Ello lo lograríamos sustituyendo la norma enunciada en *Pueblo v. Díaz Díaz*, ante, por una que establezca una distinción entre la situación de la confidencia brindada por un confidente "confiable" y la del caso en que éste no lo es. Esto, a su vez, requiere que el grado de corroboración exigido sea distinto dependiendo precisamente de la clase de confidencia de que se trate.

Debe mantenerse presente que la confidencia dada por un confidente anónimo es una *que se presume no confiable.*[5] Somos del criterio que no debemos permitir que se interfiera con la libertad de un ciudadano, o con la santidad de su hogar, meramente a base de una información que fue brindada por una persona que no se identifica ante las autoridades y cuya acción puede ser el producto de una venganza, una broma o de un acto de discriminación de cualquier clase; en fin, a base de una declaración que no presta garantía alguna de veracidad.

El gran número de casos que han llegado ante nuestra consideración en los últimos años sobre intervenciones con ciudadanos por parte de agentes del orden público a base de *alegadas* confidencias anónimas sobre actividad delictiva recibida por dichos agentes nos preocupa grandemente y nos hace pensar sobre la posibilidad de que estemos ante un nuevo tipo de casos *sobre testimonio estereotipado* el cual, como sabemos, debe ser examinado con especial rigor por los tribunales. *Cf. Pueblo v. Ayala Ruiz*, 93 D.P.R. 704 (1966); *Pueblo v. Soto Zaragoza*, 94 D.P.R. 350 (1967); *Pueblo v. González del Valle*, 102 D.P.R. 374 (1974); *Pueblo v. Almodóvar*, 109 D.P.R. 117 (1979).

---

[5] M.H. Rebell, *The Undisclosed Informant and the Fourth Ammendment: A Search for Meaningful Standards*, 81 Yale L.J. 703 (1972); W.R. LaFave y J.M. Israel, *Criminal Procedure*, Minnesota, Ed. West Publishing Co., 1984, Sec. 2.9.

Dicha situación exige, en protección de los derechos que les concede y garantiza a los ciudadanos de este país el citado Art. II, Sec. 10 de nuestra Carta de Derechos, ante, y la Regla 11 de Procedimiento Criminal, ante, que una *confidencia anónima sea corroborada al máximo posible* por la Policía de Puerto Rico con anterioridad a que se proceda contra el ciudadano involucrado en dicha confidencia anónima y no como contempla el caso de *Pueblo v. Díaz Díaz*, ante, el cual sólo requiere la ocurrencia de *uno* de los criterios enumerados. Ello, a nuestro juicio, se lograría exigiendo que cuando se trate de esta clase de confidencia, la misma sea corroborada mediante el cumplimiento de los criterios segundo, tercero y cuarto señalados en *Pueblo v. Díaz Díaz*, ante; esto es, que la confidencia conduzca a la Policía hacia el criminal en términos de lugar y tiempo, que la misma sea corroborada por observaciones del agente o por información proveniente de otras fuentes, y que la corroboración realizada se relacione con actos delictivos o en proceso de cometerse. En cuanto a éste último, debe quedar claro, naturalmente, que no se exige que los hechos que el agente observa, en corroboración de la confidencia recibida, sean delictivos propiamente. De ello así suceder, entra *automáticamente* en operación lo dispuesto por la Regla 11 de Procedimiento Criminal, ante, haciéndose innecesaria la aplicación de la norma vigente de *Pueblo v. Díaz Díaz*, ante, y la "norma" aquí propuesta.

*Respecto a la situación en que la confidencia proviene de una fuente "confiable", la situación obviamente es distinta.* En esta clase de situaciones, el informante ha sido debidamente "identificado" por la Policía: (1) como uno que en el pasado ha brindado información sobre actividad delictiva que ha resultado correcta o (2) se trata de una confidencia que brinda una información que constituye una declaración contra interés penal del que la hace. *Existe en esta clase de situaciones, cuando menos, una garantía o, si se quiere,*

*una mayor probabilidad de que la información que se ofrece sea verdadera.*(⁶) No hay razón, por lo tanto, para requerir que esa clase de confidencia sea corroborada de la misma manera que cuando se trata de una confidencia anónima. En esta clase de situaciones se hace innecesario, a nuestro juicio, que se cumpla con el cuarto criterio del caso de *Pueblo v. Díaz Díaz*, ante. Basta con que la confidencia sea corroborada mediante el cumplimiento de los criterios segundo y tercero —esto es, que la confidencia conduzca hacia el criminal en términos de lugar y tiempo, y que la misma sea corroborada por observaciones del agente o por información proveniente de otras fuentes— para que exista la requerida "causa probable", o los "motivos fundados", que se exige en nuestra jurisdicción para que la Policía pueda intervenir con el ciudadano señalado en la confidencia como involucrado en actividad delictiva.

## IV

En el presente caso, como hemos visto, se trata de una confidencia anónima. De hecho, el agente Oliveras no pudo, durante la vista de supresión celebrada, ni tan siquiera precisar si el informante había sido una persona del sexo masculino o femenino. Procedemos a examinar la situación de acuerdo con la norma aquí propuesta.

De las declaraciones brindadas por los dos agentes del orden público no es factible determinar con certeza si la confidencia condujo "hacia el criminal· en términos de lugar y

---

(⁶) A esos efectos, los tribunales de instancia deberán constatar que la confidencia que haya servido de base a la intervención de los agentes del orden público con un ciudadano en particular, o a la expedición de una orden de allanamiento, efectivamente sea una "confiable", ya sea porque el confidente previamente haya suministrado información correcta a la Policía, ya porque la información brindada pueda constituir una declaración contra interés penal del informante. En adición, deberán asegurarse que de dicha confidencia surjan suficientes detalles sobre la actividad delictiva delatada y la forma y manera en que el confidente obtuvo la información que brinda.

tiempo".(7) Aun cuando ello así fuera, nos enfrentamos a la situación de que si bien es cierto que los agentes pudieron corroborar que se trataba del mismo automóvil descrito en la confidencia y que en el mismo viajaban dos personas cuyos apodos eran parecidos a los nombres informados en la misma, *no es menos cierto que la corroboración realizada por ellos no fue en relación con "actos delictivos, o en proceso de cometerse"* (petición de *certiorari*, pág. 3), ya que lo que los agentes observaron fue meramente a dos ciudadanos transitando tranquilamente en un vehículo de motor por una de las vías públicas de nuestro país, a lo que ellos tenían perfecto derecho.

En ausencia de ello, y al no estar cometiendo dichas personas delito de clase alguna en su presencia, los agentes Oliveras y Carrión *no tenían facultad, bajo la Regla 11 de Procedimiento Criminal, ante, para detener ese vehículo e intervenir con las personas que se encontraban en el mismo.*(8) No tenían dichos agentes causa probable para así actuar. *Únicamente existía una sospecha sobre supuesta actividad delictiva. Ello, como sabemos, no basta en nuestra jurisdicción.* Art. II, Sec. 10 de nuestra Carta de Derechos, ante; *Pueblo v. Rey Marrero*, ante; *Pueblo v. Lastra Sáez*, ante; *Pueblo v. Fournier*, ante. Cualquier evidencia ocupada

---

(7) Conforme la declaración del agente Oliveras, la confidencia fue a los efectos de que dos individuos —conocidos por Gilberto y "Mickey"— frecuentaban, en el automóvil descrito, una estación de gasolina Mobil a la entrada de la Urb. Round Hill, Río Piedras, Puerto Rico. Los agentes vieron èl referido vehículo de motor en el estacionamiento de un restaurante Burger King localizado en el Centro Comercial Plaza Trujillo. *De sus declaraciones no surge si se trata del mismo lugar.*

(8) Debe mantenerse presente que, a diferencia del presente caso, los agentes en el caso de *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139, 144 (1985) —luego de recibir la confidencia y poder observar que los individuos a la cual se refería la misma comenzaron a correr al notar la presencia de la patrulla de la Policía— *se limitaron a seguir a dichos individuos y no intervinieron con éstos hasta tanto tuvieron "motivos fundados" para hacerlo*, esto es, al observar que uno de ellos arrojó al pavimento un arma de fuego.

en el presente caso como consecuencia de la intervención ilegal acaecida, resulta inadmisible en evidencia.

Resulta, cuando menos, preocupante la posición asumida por tres de los integrantes de este Tribunal a los efectos de que "'la ocupación del cono conteniendo picadura de marihuana no constituyó un registro *sino la incautación de material prima facie delictivo*'". (Énfasis suplido.) Opinión disidente, pág. 368.

En el caso de autos es evidente que no procede la aplicación de la doctrina sobre evidencia ilegal a plena vista. Como es hartamente conocido, los requisitos para la aplicación de dicha doctrina —según lo establecimos en *Pueblo v. Dolce*, 105 D.P.R. 422, 436 (1976)— lo son:

> 1) El artículo debe haberse descubierto por estar a plena vista y no en el curso o por razón de un registro[;]
> 2) *El agente que observe la prueba debe haber tenido derecho previo a estar en la posición desde la cual podía verse tal prueba*[;]
> 3) Debe descubrirse el objeto inadvertidamente[, y]
> 4) *La naturaleza delictiva del objeto debe surgir de la simple observación.* (Énfasis suplido.)

Resulta obvio que en el presente caso no se cumple con, *por lo menos*, dos de los antes transcritos requisitos. En primer lugar, el agente de la Policía que ocupó el "cono" no tenía derecho a estar en la posición desde la cual pudo observar dicho objeto por razón *de que no tenía derecho a intervenir y detener el vehículo en que viajaba el peticionario.*

Aun asumiendo —a los fines de la argumentación— que sí tenía ese derecho, resulta evidente que la "naturaleza delictiva del objeto" *no surgía de la simple observación.* Recordaremos que el cono estaba doblado y tapado con un *tape*. No se veía la picadura en su interior. Es por ello que causa sorpresa que en la opinión disidente se citen, en apoyo de esa errónea posición, expresiones del suscribiente en *Pueblo v. Conde Pratts*, 115 D.P.R. 307 (1984), por cuanto en dicho

caso lo observado por los agentes del orden público fue *un arma de fuego*, lo cual nos parece es muy distinto a un cono de papel.

Por último —y en cuanto a la cita de jurisprudencia del Tribunal Supremo de Estados Unidos que se hace en la opinión disidente emitida— debe recordarse que en la jurisdicción federal la llamada "regla de exclusión" no goza por sí misma de rango constitucional, sino que es meramente una medida profiláctica de los derechos bajo la Cuarta Enmienda de la Constitución federal, L.P.R.A., Tomo 1. Por ende, en esa jurisdicción la misma está sujeta a modificación o abolición. *Illinois v. Gates*, 462 U.S. 213, 223 (1983). En Puerto Rico, por el contrario, nuestra Constitución expresamente dispone, en lo pertinente, que la evidencia obtenida en violación del citado Art. II, Sec. 10 de nuestra Carta de Derechos, ante, pág. 299, "*será inadmisible* en los tribunales". (Énfasis suplido.) Como es sabido, la Enmienda Cuarta de la Constitución federal, ante, "describe el ámbito mínimo de la garantía que reconoce. Los estados no pueden achicar esas fronteras, pero pueden expandirlas". *Pueblo v. Dolce*, ante, pág. 427. En otras palabras, habiendo el Tribunal Supremo de Estados Unidos reconocido expresamente la facultad de los estados federados para expandir la garantía contra registros y allanamientos ilegales más allá de los límites de la citada Cuarta Enmienda de la Constitución federal, ante, *Cooper v. California*, 386 U.S. 58, 62 (1967), este Tribunal, al interpretar la Constitución del Estado Libre Asociado de Puerto Rico, *puede ampliar* el ámbito de los derechos humanos de los residentes de nuestro país. *Pueblo v. Dolce*, ante, pág. 428.

Por los fundamentos antes expresados, es que concurro con la sentencia revocatoria de la resolución emitida por el Tribunal Superior de Puerto Rico, Sala de Carolina, de fecha

9 de mayo de 1986, la cual sentencia decreta la supresión de la evidencia ocupada al aquí peticionario el día 28 de diciembre de 1985.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se unen·los Jueces Asociados Señores Ortiz y Alonso Alonso.

No podemos suscribir la tesis del apelante Miguel A. García Colón que encuentra implícitamente eco en la sentencia del Tribunal y revoca el dictamen del Tribunal Superior, Sala de Carolina, que denegó su solicitud de supresión de evidencia. Nuestras objeciones están fundadas en que la sentencia es producto de una interpretación errónea de la doctrina aplicable y descarta sin justificación las determinaciones de hecho del foro de instancia. Expliquémosnos.

En *Pueblo v. Díaz Díaz*, 106 D.P.R. 348, 354 (1977), expusimos así el resumen normativo para evaluar casos de confidencias:

> En la jurisdicción federal se ha debatido y considerado la cuestión. Jurisprudencialmente se han fijado criterios razonables para determinar las circunstancias en que una confidencia puede servir de base para la existencia de causa probable, los cuales merecen nuestra aprobación. El análisis de casos revela que una confidencia es suficiente para validar la existencia de causa probable si se establece la concurrencia de una o más de las siguientes circunstancias: 1) que el confidente previamente ha suministrado información correcta; 2) que la confidencia conduce hacia el criminal en términos de lugar y tiempo; 3) que la confidencia ha sido corroborada por observaciones del agente, o por información proveniente de otras fuentes; y 4) que la corroboración se relaciona con actos delictivos cometidos, o en proceso de cometerse. Véanse: *United States v. Harris*, 403 U.S. 573 (1971); *Whiteley v. Warden*, 401 U.S. 560 (1971); *Spinelli v. United States*, 393 U.S. 410 (1969); *Recznik v. City of Lorain*, 393 U.S. 166 (1968);

*McCray* v. *Illinois*, 386 U.S. 300 (1967); *Beck* v. *Ohio*, 379 U.S. 89 (1964); *Ker* v. *California*, 374 U.S. 23 (1963); *Wong Sun* v. *United States*, 371 U.S. 471 (1962); *Jones* v. *United States*, 362 U.S. 257 (1960); *Draper* v. *United States*, 358 U.S. 307 (1959).

Bajo la anterior norma, no existe fundamento jurídico de peso para establecer una dicotomía entre confidente confiable en virtud de información correcta previamente suministrada o de un confidente anónimo. Cualesquiera de las circunstancias expuestas en *Pueblo v. Díaz Díaz*, supra, son suficientes. Lo crucial y determinante es que "puede establecerse causa probable mediante prueba de una confidencia que aunque en su origen sea incompleta, unida a *información ulterior* obtenida por los agentes, en algún sentido o medida *corrobore* que la persona arrestada estaba en el proceso de cometer un delito grave". (Énfasis suplido.) Íd., pág. 355. En el caso de autos, fácticamente se cumplen satisfactoriamente estas exigencias.

La cuestión requiere una breve referencia a los principios elementales que rigen esta zona vital del derecho constitucional penal según plasmada en el Art. II, Sec. 10 de nuestra Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1. Al hacerlo recordamos que las "garantías personales frente al arresto, el registro, la incautación y el allanamiento, *tienen su límite en la conducta criminal.* Sólo para casos de sospecha fundada o sea cuando medie causa probable —*fuera de actuaciones de delito in fraganti determinadas en la ley penal*— se concede a la autoridad judicial facultad de expedir mandamientos de arresto y registro". (Énfasis suplido.) 4 Diario de Sesiones de la Convención Constituyente 2567–2568 (1952).

I

A los fines de los requisitos exigidos para establecer causa probable según la información provista a la Policía, la

doctrina en Estados Unidos ha establecido una distinción entre el *informante*(1) y la víctima o testigo de un delito.

Como regla general, se reconoce al *informante* como la persona que es miembro de la comunidad criminal o está en su periferia. En el otro extremo, se admite que la *víctima* o *testigo* es un ciudadano promedio que por las circunstancias de un momento dado es perjudicado o presencia un acto delictivo y lo informa a la Policía. W.R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, Secs. 3.3, 3.4 y 3.4(a). Bajo la categoría de víctima o testigo se han incluido, entre otros, al "ciudadano cooperador", "ciudadano común", "ciudadano informante" e "informante no profesional".

Según este enfoque conceptual dimanante de estas realidades, en el caso de los *informantes* se exige que sean personas creíbles y que la información sea confiable; esto es, se asume falta de veracidad. Por el contrario, en el caso de testigo o víctimas se estiman confiables, a menos que existan circunstancias especiales que indiquen lo contrario. LaFave, *op. cit.*, Sec. 3.4(a).

Así, en el caso de *informantes*, el Tribunal Supremo federal inicialmente resolvió que para que exista causa probable para expedir una orden de registro era menester cumplir con dos requisitos: (1) la existencia de hechos suficientes que permitieran determinar las razones que el informante tuvo para conocer lo que informó y (2) que se probara la credibilidad del informante o la confiabilidad de su información. Véanse, también: *Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969).

---

(1) En su acepción genérica, un informante es la persona que da noticia de una cosa. *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. II, pág. 771.

Sobre el *confidente participante*, véase *Pueblo v. López Rivera*, 91 D.P.R. 693, 699 (1965).

Este análisis estricto ha sido reiteradamente descartado por el Tribunal. Por ello no cabe incorporar a nuestro acervo jurisprudencial y revivir la referida jurisprudencia para caracterizar las confidencias como "confiables" y las anónimas *no confiables.* Ello significa una norma *más* rígida que la aprobada por este Foro hace una década en *Pueblo v. Díaz Díaz,* supra. Nuevamente rechazamos ese enfoque.

La casuística en que se apuntala la propuesta para abandonar *Pueblo v. Díaz Díaz,* supra, fue dejada sin efecto por el Tribunal Supremo federal en *Illinois v. Gates,* 462 U.S. 213 (1983), y en *Massachussetts v. Upton,* 466 U.S. 727 (1984). En el primero, la Policía recibió una carta anónima en la que se indicaba que un matrimonio vivía de vender drogas que adquiría cuando la esposa viajaba en auto a Florida, lo dejaba cargando y regresaba por avión, y su esposo iba por avión a Florida y regresaba en el auto con las drogas. La Policía pudo corroborar que él viajó a Florida, se hospedó en un cuarto de un motel a nombre de su esposa y al otro día viajó en el auto de su familia con una mujer por la autopista que llega a Chicago. A base de esta información, se obtuvo orden de registro del auto y de la residencia. Planteada frontalmente la ilegalidad del registro, dicho tribunal abandonó la norma de *Aguilar v. Texas,* supra, y de *Spinelli v. United States,* supra, y delineó una fundada en un análisis a base de la totalidad de las circunstancias. La regla (*test*) es si, a base de todos los hechos presentes, incluso los criterios de *Aguilar v. Texas,* supra, y de *Spinelli v. United States,* supra, hay una probabilidad razonable (*fair probability*) de encontrar contrabando o prueba de un delito en un lugar específico. *Illinois v. Gates,* supra, pág. 238.

En *Illinois v. Gates,* supra, el Tribunal indicó que los *criterios* de *Aguilar v. Texas,* supra, y de *Spinelli v. United States,* supra, no tienen *status* independiente, aunque son relevantes a la determinación de causa probable. Así, al examinar la confiabilidad de una confidencia, la deficiencia en uno u

otro criterio puede ser compensada por el otro o por cualquier otro indicio de confiabilidad. *Illinois v. Gates*, supra, pág. 233. En resumen, bajo ese análisis la función judicial es hacer un balance de todos los indicios de confiabilidad. Íd., pág. 234.

Finalmente, el mismo Tribunal federal rechazó que la corroboración de una actividad inocente no fuera suficiente para establecer causa probable. Opinó que no hay razón para limitar el análisis a solamente ver si la conducta observada es inocente o incriminatoria, sino evaluar el grado de sospecha que conllevan *todos los actos de la persona. Illinois v. Gates*, supra, págs. 243–244 esc. 13. También resolvió que *no se exige* que toda la información de la confidencia sea correcta. Íd., págs. 245–246 esc. 14.

Es evidente, pues, que el análisis de la totalidad de las circunstancias de *Illinois v. Gates*, supra —según establecido en *Pueblo v. Díaz Díaz*, supra— es válido aún para casos de confidencias anónimas. Precisamente, nuestra decisión se enmarcó en una investigación e intervención policial que se inició mediante llamada *anónima.*

En resumen, el cumplimiento de cualesquiera de los cuatro (4) criterios indicados en *Pueblo v. Díaz Díaz*, supra, es suficiente indicio de confiabilidad para determinar causa probable a base de la información provista, sea por informante anónimo o conocido. Lo esencial es la naturaleza y la veracidad intrínseca de la confidencia en términos de su corroboración una vez es puesta en marcha la investigación.(2)

---

(2) Ello no es contrario a la norma de que las confidencias anónimas, por *sí solas*, no son suficientes para establecer causa probable. *Illinois v. Gates*, 462 U.S. 213 (1983). Tal insuficiencia no le resta valor a la labor de *investigación*. Si son complementadas y corroboradas, constituyen un instrumento valioso para combatir el crimen. Un estudio encontró que sirven como base en más de la mitad de las órdenes de registro expedidas. M.H. Rebell, *The Undisclosed Informant and the Fourth Ammendment: A Search for Meaningful Standards*, 81 Yale L.J. 703 (1972).

## II

La sentencia de hoy del Tribunal, sin el beneficio de una exposición narrativa de la prueba debidamente certificada, deja sin efecto la resolución del ilustrado foro de instancia que aquilató el valor probatorio de la prueba testifical. Aparte de que ello constituye una técnica adjudicativa objetable, no toma en cuenta el *análisis total de circunstancias* que desde ese estrado primario apreció el juzgador de los hechos. Reproduzcámoslo.

Dicho foro primeramente invocó a *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985). Allí reconocimos que la "Policía de Puerto Rico, en protección de la ciudadanía en general, tiene perfecto derecho a patrullar las vías públicas de nuestro país. Como corolario de ese derecho, *tiene la obligación de investigar toda llamada telefónica recibida o información brindada por dicha ciudadanía* referente a posible actividad delictiva. Los dos agentes del orden público envueltos en el presente caso, en cumplimiento de su deber, así actuaron". (Énfasis suplido y en el original.) Íd., pág. 144.

Bajo este mandato es que se inicia la investigación de la policía en el caso que nos ocupa. Según el tribunal a quo:

> ... los agentes Oliveras y Carrión tenían información desde el día antes mediante llamada telefónica anónima, que los aquí peticionarios viajaban en un "auto Su[z]uki, color blanco, chocado por el lado izquierdo delantero y cuya tablilla era número 94J451 y que en dicho auto se estaba cargando el rev[ó]lver de reglamento que le había sido hurtado a una mujer policía".
> ... [T]an pronto se percatan de la presencia del vehículo y de los aquí peticionarios a quienes el agente Oliveras conocía con

---

Ello es así, pues los tribunales han validado detenciones originadas a base de información de una persona anónima —véase, *e.g., United States v. Pearce*, 356 F. Supp. 756 (E.D. Pa. 1973)— en circunstancias en que la información es que determinada persona acusada se encuentra en un lugar específico. Véanse, entre otros: *United States v. McClinnhan*, 660 F.2d 500, 502–503 (D.C. Cir. 1981); *States v. Eason*, 604 P.2d 654 (Ariz. 1979); *Moore v. U.S.*, 468 A.2d 1342 (D.C. 1983); *People v. Smither*, 415 N.E.2d 327 (Ill. 1980).

antelación al día 28 de diciembre de 1985 por haber intervenido con ellos previamente y comprobar la veracidad de la confidencia recibida por vía telefónica, deciden detener dicho vehículo y examinar los documentos relacionados con el vehículo de motor, a saber, la registración del mismo en el Negociado de Vehículo de Motor, Dept[o]. de Obras Públicas de Puerto Rico y la tablilla del carro para ver si corresponden y examinar la licencia de conducir del acusado-peticionario, Miguel García Colón. El agente Oliveras intervino con el conductor García Colón y el agente Carrión se aproximó al carro por el lado derecho del mismo desde donde puede observar al pasajero. Mientras el agente Oliveras examinaba la registración del vehículo y la licencia de conducir del acusado García Colón, las cuales, encontró en orden, el agente Carrión *se percata de que sobre la consola de los cambios hay un cono de papel de los que se usan para tomar agua, doblado en su parte superior hacia abajo con un tape, le llama la atención a su compañero a la vez que procede a ocuparlo por tener —a base de su experiencia como agente que presta servicio en la calle[,] que ésta es una forma de dispensar la sustancia controlada marihuana (picadura) y se conoce como un "cono de $5.00"*— motivo fundado para creer que se ha cometido y se está cometiendo un delito en su presencia, procede a poner bajo arresto a los aquí peticionarios y a ocupar dicho cono, en el cual efectivamente había picadura de marihuana. No se cuestiona en este incidente la corrección de los informes de la prueba de campo y del químico a los efectos de que la picadura en cuestión era marihuana.

Conforme a la prueba presentada una vez arrestados, son registrados por el agente Carrión y sobre su persona no se le ocupó nada que estuviese en contra de la ley. El agente Oliveras procedió a registrar el vehículo de motor y encontró directamente debajo del asiento del pasajero, donde momentos antes había estado sentado el co-acusado peticionario Gilberto Garay Molina, un revólver que resultó luego de comprobarse con su descripción y número de serie, el rev[ó]lver de la mujer policía Aitza Orria. La prueba demuestra, además, que los aquí peticionarios se detuvieron tan pronto se les hizo la señal por los agentes, a esos efectos, cooperaron con éstos, no ofrecieron resistencia ni intentaron correr o huir en el carro o a pie. Que esa tarde también patrullaban el área de estaciona-

miento del Centro Comercial Plaza Trujillo patrullas en motoras que se mantenían en los alrededores de los distintos establecimientos. *Exhibit* I, págs. 1–3.

A base de estos hechos correctamente aquilatados por el tribunal de instancia —bajo el deber expuesto en *Pueblo v. Ortiz Martínez*, supra— estimó que los agentes Oliveras y Carrión

[a]l encontrarse de frente con el vehículo que conducía el aquí peticionario, Miguel García Colón, pudieron corroborar la corrección de la información recibida en términos de la descripción del vehículo de motor en que éstos viajaban, la condición de chocado por la parte delantera izquierda, el número de la tablilla del mismo y la presencia de los aquí peticionarios en el mismo como le había sido informado en la confidencia. Era razonable pensar que existía la posibilidad que el arma de fuego se encontrase sobre la persona de alguno de ellos o en el carro por lo que lo detuvieron con la esperanza de que hubiese alguna discrepancia en la documentación del vehículo o que Miguel García Colón careciese de la correspondiente licencia de conducir que le permitiese a ellos ponerlo bajo custodia. Aunque los documentos todos resultaron estar en orden durante el breve tiempo en que estuvieron detenidos mientras se comprobaba la corrección de los mismos, el agente Carrión observó lo que él llama un "cono de cinco", según se conoce en el argot del narcotráfico. Esto, a nuestro juicio, le dio [sic] los motivos fundados para creer que se estaba cometiendo un delito en su presencia y autorizaba al agente Carrión y a su compañero a poner bajo arresto a los aquí peticionarios (Regla 11 de las de Procedimiento Criminal [34 L.P.R.A. Ap. II]), dicha evidencia estaba a plena vista sobre la consola de los cambios y podía ser ocupada por éstos. *Pueblo* [*v. D*]*el R*[*í*]*o*, [113 D.P.R. 684 (1982),] y *Pueblo* [*v.*] *Dolce*, 105 D[.]P[.]R[.] 422 (1976).

El registro del vehículo de motor, a nuestro juicio, es válido bajo cualquiera de los siguientes fundamentos, a saber: *primero* —ocupándose un cono de picadura de marihuana en dicho vehículo es razonable pensar que en el mismo puede haber más de esa sustanci[a] controlada[;] *segundo* —habiéndose corroborado casi en su totalidad la confidencia recibida, es razonable pensar que aquella parte de la confidencia que aun no ha

sido corroborada es cierta y hacer actos dirigidos (registro del carro) a confirmar la veracidad de este extremo de la confidencia (el rev[ó]lver está en el vehículo de motor) y finalmente bajo la teoría de que habiéndose ocupado sustancias controlada[s] en dicho vehículo, el Estado tiene el derecho de confiscar el mismo bajo las disposiciones de la Ley Uniforme de Confiscación de Vehículos, Botes y Bestias[,] y proceder a hacer un inventario en el mismo para saber los accesorios que en el mismo se encuentran en protección de una parte de los funcionarios que intervienen contra imputaciones falsas de sustracción o apropiación ilegal de equipo y accesorios no confiscable[s] y también en garantía del respeto a la propiedad ajena susceptible de uso inocente del ciudadano. Es una garantía para ambas partes.

Concluimos que bajo los hechos específicos de este caso la ocupación del cono conteniendo picadura de marihuana no constituyó un registro sino la incautación de material prima facie delictivo. En consecuencia, entendemos que el agente Carrión tenía la facultad para incautarse u ocupar el cono de picadura de marihuana que estaba en el interior del vehículo sin necesidad de mandamiento judicial previo a esos efectos. *Pueblo [v.] Conde Pratts*, [115 D.P.R. 307 (1984)] (opinión concurrente del Juez Asociado Rebollo). El registro y ocupación del rev[ó]lver debajo del asiento del pasajero en dicho vehículo de motor es secuela o el resultado de esta intervención inicial válida a nuestro juicio y[,] por ende[,] es igualmente válida la incautación del arma de fuego.

La realidad actual puertorriqueña exige una [P]olicía alerta y dispuesta a enfrentarse al crimen sin vacilación aunque con respeto a los derechos de los ciudadanos. Esta corta intervención de los agentes con los aquí peticionarios no molesta, ni incomoda, ni le causa problema al ciudadano decente y obediente de la ley, sólo al delincuente. *Pueblo [v. D]el R[í]o*, [113 D.P.R. 684 (1982)]. La protección contra registros irrazonables tiene un costo social que ha de medirse en cada caso por el grado de obstrucción que enfrenta la investigación criminal y por su efecto frustrante del propósito central del juicio que es buscar y fijar la verdad. *Pueblo [v.] Domínguez Fraguada*, 105 D[.]P[.]R[.] 537 [(1977)]. *Exhibit* 1, págs. 4–6.

En estas circunstancias, debimos respetar y confirmar el dictamen del tribunal de instancia.